CLAY COUNTY, NEBRASKA, v. ADAMS COUNTY, NEBRASKA.

FILED MAY 20, 1903. No. 12,833.

1. **Legal Settlement of Insane Person.** The legal setlement of an insane person, within the meaning of section 26, chapter 40, Compiled Statutes, is the county which would be primarily liable for the support of such person, if a pauper.

2. **Change of Residence.** If a person, neither insane nor a pauper, abandons his residence in one county and removes with his family to another, and settles in the latter with the intention of making it his home, and thereafter becomes insane, the latter county can not recover of the former for expenses incurred on behalf of such

insane person, unless it appears that he became a public charge, as an insane person, less than thirty days after abandoning his residence in the former county.

ERROR to the district court for Adams county: ED L. ADAMS, DISTRICT JUDGE. *Affirmed.*

*Ambrose E. Epperson,* for plaintiff in error.

*John Snider, contra.*

ALBERT, C.

For a considerable time previous to June, 1901, a married man resided with his family in Adams county. In that month, he moved to Clay county, taking with him his family and household goods, where he rented a house and went to housekeeping with his family, with the intention of making that county his home.

On the 23d day of August, 1901, upon inquiry duly instituted, the man was found insane and a fit subject for treatment in the hospital for the insane, by the commissioners of insanity of Clay county, and a warrant issued accordingly, in pursuance of which he was placed in such hospital for treatment. Clay county then presented a bill to Adams county for the cost and expenses incurred in the proceedings above mentioned, claiming that the man had a legal settlement in the latter county when such costs and expenses were incurred. From an order of the county board of Adams county rejecting the claim, Clay county appealed, to the district court. The district court found for the defendant and gave judgment accordingly. The plaintiff brings error.

The plaintiff's claim is based on section 26, chapter 40, Compiled Statutes (Annotated Statutes, 9615), which is as follows:

"Expenses incurred as herein provided, by one county, on account of an insane person whose legal settlement is in another county of the state, shall be refunded, with lawful interest thereon, by the county of such settlement; and

shall be presented to the county commissioners of the county sought to be charged, which shall be allowed and paid the same as other claims."

The only question in this case is, whether the patient had a legal settlement in the defendant county within the meaning of the section just quoted, when the expenses in question were incurred by the plaintiff, and the solution of that question depends on the meaning of the term "settlement" as used in that section.

The use of the word in the common law, to express the relation of a person to a place or locality, is confined almost exclusively to that portion which relates to the dispensation of public charity, for the support of those who, in the language of our own laws for the support of such person, "shall be unable to earn a livelihood in consequence of any bodily infirmity, idiocy, lunacy or other unavoidable cause," and who are commonly called paupers; it is thus most frequently employed in the reported cases and the statutes of the several states. While pauperism and insanity are by no means synonymous terms, both classes of unfortunates are, to some extent, public charges and recipients of public bounty. From these considerations, we think it may be fairly inferred that the legislature used the term "settlement," in the section under consideration, in the sense in which it is used in the common law relative to the support of the poor at public expense. The term, as there used, is defined by Webster as "the legal settlement or establishment of a person, in a particular town or parish, which entitled him to maintenance, if a pauper, and subjects the town or parish to his support." In *Inhabitants of Warren v. Inhabitants of Thomaston*, 43 Me. 406, 69 Am. Dec. 69, the court say:

"The place of one's settlement is a place where such person has a legal right to support as a pauper."

The foregoing definitions are hardly accurate because, in both, the right of a pauper to temporary support or relief, from a place other than that of his settlement, if actually present in such other place, is overlooked. In such case

the place of his settlement is liable to the place furnishing such support or relief. Section 13, chapter 67, Compiled Statutes (Annotated Statutes, 9362). It would be more accurate to say that one's settlement is the political subdivision primarily liable for his support as a pauper.

The inquiry narrows down to this question: Which of the two counties would have been primarily liable for his support, as a pauper, had he been one when he became insane? Section 11, chapter 67, Compiled Statutes (Annotated Statutes, 9360), is as follows:

"Any person becoming chargeable as a pauper, in this state, shall be chargeable as such pauper in the county in which he or she resided at the commencement of the thirty days immediately preceding such person becoming so chargeable."

The person in question abandoned his residence in Adams county, and moved with his family and effects to Clay county, in June, 1901, with the intention of making the latter county his home, and resided there continuously until the inquiry as to his sanity was instituted by the commissioners of insanity of the latter county, in the latter part of August, of that year. Whether he was sane and capable of forming an intention to change his residence when he left Adams county was one of the questions submitted to the trial court on conflicting evidence, and the trial court having resolved that question in favor of the defendant, it stands as one of the established facts of this case, that he was sane at that time. We need not inquire in this case the precise stage of insanity at which the afflicted person becomes a public charge, because the evidence is sufficient to warrant a finding that such person did not become a public charge until the proceedings were instituted before the commissioners of insanity, which was some two months after he had taken up his residence in Clay county. He was not a pauper, hence, he was not only competent, but free to abandon his former residence and select a new one. It is clear, therefore, that under the provisions of section 11, *supra,* had he become a pauper

at the time such inquiry was instituted, Clay county would have been primarily liable for his support as such. It follows, that at the time such proceedings were instituted and expenses incurred, his legal settlement was in Clay county and not in the defendant county, and that no recovery can be had in this case.

The judgment of the district court is right, and we recommend that it be affirmed.

BARNES and GLANVILLE, CC., concur.

By the Court: For the reasons stated in the foregoing opinion, the judgment of the district court is

AFFIRMED.