[File No. 6029.]

CITY OF ENDERLIN, a Municipal Corporation, Respondent, v. PONTIAC TOWNSHIP, CASS COUNTY, a Public Corporation, Appellant.

(242 N. W. 117.)

106

Opinion filed March 23, 1932.

*Frank I. Temple,* for appellant.

*Tim A. Francis* and *Charles S. Ego,* for respondent.

CHRISTIANSON, Ch. J.   This appeal involves a controversy, under the laws relating to poor relief, as regards the "legal residence" of one George Marks and his family.   The case originated in a justice's court in Ransom county upon a complaint of an overseer of the poor.   The justice of the peace made an order for the removal of said George Marks and his family from the city of Enderlin in Ransom county to Pontiac township in Cass county.   An appeal was taken to the district court from such order.   In the notice of appeal it was stated that the appeal was taken "both on questions of law and fact and from the whole of said order" and that a new trial was demanded in the district court.   The appellants further assigned and specified certain errors in the proceedings had in the justice's court which, for reasons later stated, we find it unnecessary to set forth at length.   In the district court the case was submitted upon the following stipulated statement of facts:

"That prior to February 29th (28th) 1929, the said George Marks

and Tina Marks, his wife, and their family resided in Shenford Township in the County of Ransom and State of North Dakota for more than twenty years and that all of their said children hereinbefore mentioned were born in Ransom County, North Dakota.

"That from February 29th (28th) 1929 to August 19, 1929, the said George Marks and his family lived and resided in the Town of Anselm in the County of Ransom and State of North Dakota.

"That on August 19th, 1929 the said George Marks and his said wife and family moved to Richland County where they lived and resided until November the 12th, 1929.

"That on or about the 12th day of November, A.D., 1929, the said George Marks, his wife and family moved to what is known as the John Hoffman place in Cass County, North Dakota, where they lived and resided until May 17th, 1930.

"That on or about the 17th day of May, A.D., 1930, the said George Marks and his said wife and family moved to Colburn Township in the County of Ransom and State of North Dakota, where they lived and resided until on or about the 21st day of October, A.D., 1930.

That on or about the 21st day of October, A.D., 1930, the said George Marks and his said wife and family moved to the Adolph Nustul place in Cass County where they lived and resided until on or about March 11th, 1931.

"That on or about the 11th day of March, A.D., 1931, the said George Marks and his said wife and family moved to the city of Enderlin in the County of Ransom and State of North Dakota, where they lived and resided until April 21st, 1931.

"That on or about the 21st day of April, A.D., 1931, the said George Marks and his said wife and family moved to what is known as the Kurtz place in Pontiac Township, Cass County, North Dakota, where they lived and resided until on or about August 15th, 1931.

"That on August 15th, 1931, the said George Marks, his said wife and family moved back to the City of Enderlin in Ransom County, North Dakota, where they lived and resided until August 19th, 1931.

"That on the 19th day of August, A.D., 1931, by an order of Fred Underwood, one of the Justices of the Peace of the City of Enderlin in the County of Ransom in the State of North Dakota, directed to one Christ Wold, Chief of Police of the City of Enderlin, in the Coun-

·ty of Ransom and State of North Dakota, said George Marks, his wife and family were removed and conveyed to Pontiac Township in Cass County, North Dakota, by the said Christ Wold, Chief of Police of the City of Enderlin, Ransom County, North Dakota.

"That an appeal was taken from the order of the said Justice of the Peace by the above named Defendants and Appellants, Pontiac Township and Cass County, municipal corporations, on questions of law and fact and upon certain grounds of error set forth in such Notice of Appeal and which is filed herein and to which reference is hereby made.

"That during the month of February, 1931, the said George Marks, his wife and family received from Colburn Township in Ransom County, North Dakota, temporary aid and relief under the poor relief of Colburn Township in said Ransom County in the sum of Twelve Dollars ($12.00).

"That the foregoing facts are all of the facts and are stipulated to be the facts with regard to the residence of the said George Marks, his said wife and family."

Upon the facts as so stipulated the district court made conclusions of law "that the residence of the said George Marks, Tina Marks, his wife, and Ester Marks, Myrtle Marks, Pearl Marks and Wallace Marks, their children, for poor relief purposes is in Cass county, North Dakota," and ordered judgment, "that the Order of Fred Underwood, Justice of the Peace herein, removing said family, is in all things affirmed."

The proceedings in the justice's court, the appeal to, and proceedings had in, the district court, were had under the following sections of the Compiled Laws of North Dakota 1913:

Section 2515. "Upon complaint of any overseer of the poor, any justice of the peace may, by his warrant directed to and to be executed by any constable or by any other person therein designated, cause any poor person found in the township of such overseer likely to become a public charge, and having no legal residence therein, to be sent and conveyed at the expense of the county, to the place where such person belongs, if the same can be conveniently done; but if he or she cannot be so removed, such persons shall be relieved by such overseer whenever such relief is needed."

Section 2516. "If any overseer of the poor of any township in any county in North Dakota, to which any pauper shall have been removed, as above provided, shall feel himself aggrieved by such order of removal, he may at any time within twenty days after such removal shall be known to him, appeal from the decision of the justice of the peace ordering such removal, to the district court of the county from which the removal was ordered to be made; such appeal to be taken, tried and determined and costs adjudged as in other cases of appeals from judgment of the justice of the peace, and the order of removal may be vacated or affirmed according to law and the right of the cause."

Section 2517. "Such appeal shall be heard at the term of court next after the same is filed therein, if in the opinion of the court reasonable notice of the appeal has been given to the opposite party; but if not thus given, the cause shall stand continued until the next term of the court."

According to the provisions of the justice's code an appeal may be taken from a judgment of a justice of the peace on questions of law alone (Comp. Laws 1913, § 9164); or a general appeal may be taken for a review of all questions of law and fact (Comp. Laws 1913, § 9163). In the latter case it is provided: "The action shall be tried anew in the district court in the same manner as actions originally commenced therein. . . ." (Comp. Laws 1913, § 9172). In this case the appellants took a general appeal; they recited in the notice of appeal that the appeal was taken "both on questions of law and fact" and demanded a trial anew in the district court, and "that said matter and the whole thereof . . . be tried and determined in said District Court."

The appellants, having invoked the jurisdiction of the district court to hear and determine the controversy, cannot now be heard to say that that court should not have exercised the jurisdiction so invoked. Lyons v. Miller, 2 N. D. 1, 48 N. W. 514; William Deering & Co. v. Venne, 7 N. D. 576, 75 N. W. 926; Mann v. Hvammen, 32 S. D. 596, 144 N. W. 130. Furthermore, there is nothing to show that any question of jurisdiction was raised in the district court. No statement of case has been settled. We have no means of knowing what occurred in the district court except from the recitals in the judgment. From such

recitals it appears that the parties submitted the cause to the district court for determination upon a stipulated statement of facts. It does not appear that the appellants raised any question of jurisdiction in the district court. The district court is a court of general jurisdiction. The ultimate question in controversy is one within the general jurisdiction of the district court. Upon the record here it must be assumed that the parties invoked the power of the court to determine such question. Hence, the alleged errors of law, said to have been committed in the justice's court, are not matters for consideration on this appeal. Brissman v. Thistlethwaite, 49 N. D. 417, 192 N. W. 85.

It is next contended that there was no showing that George Marks and his family were public charges or likely to become such and that consequently there was no authority to order their removal. Comp. Laws 1913, § 2515.

The record does not disclose that this question was raised at all in the district court. While the appellants specified numerous alleged errors of law committed by the justice of peace, there was no suggestion that Marks and his family were not public charges or likely to become such. As said, the case was submitted to the district court upon a stipulation of facts. That stipulation provided that the matter "be brought on and heard before the district court of Ransom County at the convenience of the court and the parties . . . *in order that the residence of the said George Marks and his said wife and family may be determined* with just as little delay as possible." If they were not public charges or likely to become such, the question of such residence was utterly immaterial. The only rational deduction that can be drawn from the record is that all parties assumed that Marks and his family were public charges or likely to become such and that the only material question in controversy was, whether Marks and his family had a residence or settlement in Ransom county or in Cass county within the purview of the laws relating to poor relief. If Marks and his family were not public charges or likely to become such it is difficult to see how Pontiac township or Cass county could be prejudiced by, or have any interest in, the order of removal. We are wholly agreed that the record before us warrants only one conclusion and that is, that the parties assumed and presented the case to the trial court on the theory that

Marks and his family were public charges or likely to become such and that the only controverted question was the one relating to legal residence. It is fundamental that the theory thus adopted in the trial court must be adhered to on appeal. 3 C. J. pp. 727, 737.

It is next contended that the trial court was in error in holding that George Marks and his family have a "legal residence" in Cass county and that that county is under obligation to provide aid under the poor relief laws of this state. So far as material to the controversy here, our laws, relating to "residence" as a condition prerequisite to a poor person being entitled to relief in a particular county, read as follows:

"Residence may be acquired in any county so as to oblige such county to relieve and support the persons acquiring such residence in case they are in need of relief, as follows:

"1. The residence of a married woman follows that of her husband if he has any within the state. . . .

"2. Legitimate children shall follow and have the residence of their father if he has any within the state. . . .

"4. Each male person and each unmarried female over the age of twenty-one years, who shall have resided one year continuously in any county in this state, shall thereby gain a residence in such county. . . . Every person who has resided one year continuously in the state, but not in any one county, shall have a settlement in the county in which he has longest resided within such year. The time during which a person has been an inmate of a hospital, poorhouse, jail, prison or other public institution and each month during which he has received relief from the poor fund of any county, shall be excluded in determining the time of residence hereunder. Every minor not emancipated and settled in his own right shall have the same settlement as the parent with whom he has last resided. . . .

"6. Each residence when once legally acquired shall continue until it is lost or defeated by acquiring a new one in this state, or by voluntary absence from the county in which such residence had obtained for one year or more; and upon acquiring a new residence, or upon the happening of such voluntary absence, all former residence shall be defeated and lost, and the provisions of this section shall apply to cases

114

of residence begun to be acquired or lost or defeated, as well heretofore as hereafter." Comp. Laws 1913, § 2501.

As regards "residence" generally our laws (Comp. Laws 1913, § 14) provide:

"Every person has in law a residence. In determining the place of residence the following rules are to be observed:

"1. It is the place where one remains when not called elsewhere for labor or other special or temporary purpose, and to which he returns in seasons of repose;

"2. There can be only one residence;

"3. A residence cannot be lost until another is gained;

"4. The residence of the father during his life, and after his death the residence of the mother, while she remains unmarried, is the residence of the unmarried minor children;

"5. The residence of the husband is presumptively the residence of the wife;

"6. The residence of an unmarried minor who has a parent living cannot be changed by either his own act or that of his guardian;

"7. The residence can be changed only by the union of act and intent."

The term "residence" employed by the legislature in section 14, supra, has a meaning quite different from the terms "residence" or "legal residence" in the laws relating to poor relief. Burke County v. Brusven, ante, 1, 241 N. W. 82. The term "residence" within the purview of § 14, supra, is synonymous with "domicile." 19 C. J. pp. 395, et seq.; 9 R. C. L. p. 539; Restatement of the Law of Conflict of Laws, §§ 10, et seq. See also McEwen v. McEwen, 50 N. D. 662, 197 N. W. 862. No particular length of time is required to enable a person to become a resident of the state or of any particular county or political subdivision therein within the purview of § 14, supra. Neither is any particular period of time required for a person to change his residence and acquire a residence elsewhere. A non-resident may become a resident of the state, or of any county or political subdivision of the state, upon the performance of some act indicative of an intention to establish a residence within the state, within the county, or the political subdivision as the case may be, coupled with an actual present intention

to establish such a residence. See Jacobson v. Kill, 94 Okla. 146, 221 Pac. 21. And a person who is a resident of a certain county or political subdivision of the state may become a non-resident by the performance of an act indicative of an intention to abandon his then residence and to establish a residence elsewhere, accompanied by a then present intention to accomplish such purpose.

The terms "residence" and "legal residence" employed by the legislature in the laws relating to poor relief have reference to the status acquired by a person within a certain county or political subdivision so as to entitle such person to poor relief within such county or political subdivision. Burke County v. Brusven, ante, 1, 241 N. W. 82, supra. It will be noted that according to the provisions of § 2501 (subd. 4) Comp. Laws 1913, a person in order to acquire a "residence" for poor relief purposes must reside continuously in the state for one year. A person who so resides acquires a "legal residence" or "settlement" within the purview of the poor relief laws, (1) in any county in the state in which such person *resides* continuously for one year; or (2) if such person does not reside continuously in any one county for a year a "legal residence" or "settlement" is acquired in the county in which he longest *resides* within such year. A "legal residence" or "settlement" thus once established, that is, the status thus created, may be lost or defeated: (1) by the acquisition of a new residence; or (2) "by voluntary absence from the county in which such residence had obtained for one year or more." Section 2501 (subd. 6) Comp. Laws 1913.

"Both paragraphs 4 and 6 of § 2501, Comp. Laws 1913, bear unmistakable evidence of legislative intention to fix the residence of a person for purposes of poor relief in a county where he shall have resided continuously for one year. That portion of the statute above quoted, which has reference to fixing the obligation for relief with respect to a person who has not resided in any one county for a year, was added by an amendment in 1907 (Sess. Laws 1907, chap. 183) when the period of residence required was changed from ninety days to one year. The purpose of this provision is evident. It is to fix the obligation as between counties, only with respect to persons who have not resided continuously in any one county for a year prior to the

time the application is made." Kost v. Sheridan County, 46 N. D. 75, 78, 179 N. W. 703.

It will be noted that the "legal residence" or "settlement" as defined by the statutes relating to poor relief may be lost in a manner different from that in which legal residence under § 14, Comp. Laws 1913, or legal residence under the election laws of the state, may be lost. Thus, a person having a residence in this state under § 14, supra, or a person having the qualifications of an elector in any county in this state, does not lose his status as a resident, or as an elector, by voluntary absence from the county or the precinct in which he has a residence unless he actually abandons his residence therein and gains a residence elsewhere. He may be voluntarily, physically absent from the county for months and even years, on business or pleasure, and yet retain his residence therein. Popejoy v. Boynton, 112 Or. 646, 229 Pac. 370, 230 Pac. 1016. The residence once acquired under § 14, Comp. Laws 1913, can be changed only by the union of intent and act. A residence once gained can be lost only by the acquisition of another. Comp. Laws 1913, § 14 (subds. 3 and 7). But a residence under the laws of this state relating to poor relief becomes lost wholly without regard to the intention of the person if such person voluntarily absents himself from the county for one year or more. Kost v. Sheridan County, 46 N. D. 75, 179 N. W. 703, supra. See also Scott v. Clayton, 51 Wis. 185, 8 N. W. 171.

The word "reside" frequently has different meanings. 2 Pope, Legal Definitions, p. 1397; Shattuck v. Maynard, 3 N. H. 123. It may have different meanings even in the same statute. People ex rel. Atty. Gen. v. Owers, 29 Colo. 535, 69 Pac. 515. In statutes like the one under consideration here where a person acquires a certain status only by "residing" in the state, a county or a political subdivision, the word "resides" is often used in two senses: (1) In a popular sense, meaning to "live" in a place; to be physically present and actually stay there. Worcester v. East Montpelier, 61 Vt. 139, 17 Atl. 842; Lisbon School Dist. v. Landaff Town School Dist. 75 N. H. 324, 74 Atl. 186; Middlebury v. Waltham, 6 Vt. 200; Lask v. United States, 1 Pinney (Wis.) 77; Leicester v. Brandon, 65 Vt. 544, 27 Atl. 318; Monteiro v. St. Just S. S. Co. 123 Misc. 8, 204 N. Y. Supp. 3; State ex rel. Mickey

v. Selleck, 76 Neb. 747, 107 N. W. 1022; Clark v. Carey, 41 Neb. 780, 60 N. W. 78, 9 Am. Crim. Rep. 117; Trumbull v. Moss, 28 Conn. 253; and (2) in a legal or technical sense, denoting the legal domicile, the home of a person in contemplation of law. Com. v. Swan, 1 Pick. 194; Hinds v. Hinds, 1 Iowa, 36; Way v. Way, 64 Ill. 406; Wade v. Wade, 93 Fla. 1004, 113 So. 374; Gildersleeve v. Gildersleeve, 88 Conn. 689, 92 Atl. 684; Less v. State, 93 Tex. Crim. Rep. 154, 246 S. W. 382.

In our opinion, the word "resided" in subd. 4 of § 2501, Comp. Laws 1913, has reference to the actual residence as distinguished from the legal or technical residence of an individual, that is, it means the place where a person actually lives and stays.

When the statute speaks of a person "who shall have resided one year continuously in any county in this state," and of the county in which a person "has longest resided within such year," it has reference to actual habitation or residence, that is, it means the county in which such person has actually lived.

The legislative history of § 2501, Comp. Laws 1913, discloses that the legislature deliberately determined that a person in order to acquire a status as a "resident" of any county within the purview of the laws relating to poor relief, must "reside," that is, live within such county for a certain period of time.

As originally adopted subdivision 4, § 2501, supra, read as follows: "Sec. 4. Each male person and each unmarried female over the age of twenty-one years, who shall have resided in any county in this state ninety days, shall thereby gain a residence in such county." See Rev. Codes 1905, § 1854, subd. 4.

In 1907 the legislative assembly amended said subdivision 4 to read as follows: "Each male person and each unmarried female over the age of twenty-one years, who shall have resided one year continuously in any county in this state, shall thereby gain a residence in such county. Each minor whose parents, and each married woman whose husband has no residence in this state, who shall have resided one year continuously in any county in this state, shall thereby gain a residence in such county. Every person who has resided one year continuously in the state, but not in any one county, shall have a settlement in the

county in which he has longest resided within such year. . . ."
Comp. Laws 1913, § 2501, subd. 4.

It has remained in force, without change, since 1907. The purpose sought to be accomplished by the amendment adopted in 1907 is indicated by the emergency clause attached to the enactment, which reads as follows: "Whereas under the provisions of the present law residence may be acquired by such persons within ninety days an emergency exists and this act shall take force from and after its passage and approval."

It will be noted that under the law as it existed prior to 1907 a person could gain a residence in any given county only by residing therein continuously for the stipulated period, namely, ninety days. If a resident of the state had not resided continuously in the county in which he was then residing for ninety days he would not be entitled to poor relief in any county. Apparently the legislature deemed ninety days too short a period of time, and so they extended it to one year. At the same time it amended § 6 of the act so as to provide that voluntary absence from the county for a period of one year should result in loss of residence. The legislature, however, apparently realized that in many cases injustice might, and probably would, result if a person who might become indigent were not entitled to poor relief until he had resided continuously in a county for one year, and so the additional provision was inserted in subdivision 4, to the effect that if a person had resided one year continuously in the state, but not in any one county that then his residence, for the purposes of poor relief, should be in the county in which he had longest resided within such year.

Our laws relating to poor relief contemplate that "legal residence" or "settlement" within the purview of such laws shall be determined as of the date when the status of such person as an applicant for, or as one entitled to, poor relief comes in question. An overseer of the poor must then inquire into the status of such person, to ascertain whether he or she is entitled to relief in that county. Under our laws any person who has resided continuously in the state for one year or more has a legal residence for poor relief purposes somewhere in the state and is entitled to such relief in case of need. Logically, the first inquiry is whether an applicant for poor relief is a resident of the

state and has resided therein continuously for at least a year. A person who is not such resident, or a person who has ceased to be a resident of the state at all, is not a resident for poor relief purposes. Under § 2501, Comp. Laws 1913, a person, in order to have a "legal residence" in the state for poor relief purposes must have resided therein continuously for at least one year. If a person is found to be such resident, then the next inquiry is, in what county does such person have a legal residence? If it is found that such person has "resided" continuously in one county for one year or more, then his "legal residence" or "settlement" is in that county. Comp. Laws 1913, § 2501, subd. 4; Kost v. Sheridan County, 46 N. D. 75, 179 N. W. 703. If, however, it is found that such person, although having resided continuously in the state for more than a year, has not resided continuously in any one county for one year, then the question arises, in which county has he longest resided within such year.

Prior to the amendment of subdivision 4, adopted in 1907, there was no room for conflict between the provisions of subdivision 4 relating to the acquisition of a residence and the provisions of subdivision 6 relating to loss of a residence. When subdivision 4 spoke of acquiring a residence in a certain county in the state it meant that the person in question must have resided in such county for the time prescribed in the subdivision as a requirement of legal residence; and when subdivision 6 spoke of loss of residence either through voluntary absence from the county or by acquiring a new residence elsewhere in the state it meant in the one case that the person must have been absent from the county for the period prescribed, and in the other that he must have resided in another county for a similar period of time and thereby acquired a legal residence in such other county. But, after the amendment of subdivision 4, by the legislative enactment of 1907, providing a mode of acquiring a residence in a certain county other than by residing therein for a stipulated period of time, considerable controversy and uncertainty has arisen as to what constitutes acquiring a new residence under subdivision 6. That is the question involved and presented here. "Did the legislature intend to change the rule formerly existing under subdivision 6 as regards the mode of acquiring a new residence?" That is, did the legislature intend to permit a person

who had acquired a legal residence in a certain county, by having resided therein for a year or more, to acquire a new residence in another county even though he did not voluntarily absent himself from the county of his original residence for a year, and did not reside for one year in the latter county? Or, did the legislature intend that so far as loss of residence is concerned the rule should remain as it formerly was, namely, that residence once acquired in a certain county by residing therein for one year or more should be lost only: (1) by voluntary absence from such county for one year or more; or (2) by acquiring a new residence in another county in the state by residing therein for at least one year.

We have found this question one of much difficulty. But after a careful consideration we have reached the conclusion that the legislature by the enactment in 1907 did not intend to make any change in the mode then existing as regards the loss of residence. In short, we are of the opinion that the legislature intended that when subdivision 6 speaks of loss of residence by acquiring a new residence that it had in mind a residence acquired in another county by residing therein for at least one year. It will be noted that the provisions of subdivision 6 were not changed in any material sense by the legislative enactment of 1907, with the single exception that the period of absence required in order to lose a residence was extended from ninety days to one year to harmonize with the change made in subdivision 4 as regards the length of residence required in a county to acquire a residence. It would seem that if the legislative assembly had intended to change the rule as regards the length of time required to acquire a new residence under subdivision 6 from that which formerly existed, it would have evidenced such intention by apt words. Having seen fit to leave that provision precisely as it was, with the single exception alluded to, we are inclined to the view that the legislature intended that in cases where a person has acquired a residence in a certain county by residing therein for one year or more, that he loses such residence only: (1) by voluntary absence from such county for one year or more; or (2) by acquiring a residence in another county by residing therein for one year or more.

In this case it is undisputed that George Marks and his family, in

February, 1929, had a legal residence or settlement in Ransom County having resided there for a long period of time. It is equally undisputed that they have not absented themselves from Ransom County for one year or resided in any other county for one year or more. Consequently they have not lost their legal residence or settlement in Ransom County.

It is argued that if the legal residence or settlement of George Marks and his family is held to be in Ransom county that it will be impossible to determine which township, city or village in that county is chargeable with furnishing them support under the poor relief laws. No difficulty exists upon this score. The same rule applies in determining a question as to "legal residence" or "settlement" where it arises between townships, villages or cities as where such question arises between counties. Burke County v. Brusven, ante, 1, 241 N. W. 82.

From the stipulation of facts in this case it appears that George Marks and his family, prior to February 29 (28th) 1929, had a legal residence or settlement in Shenford township, Ransom county. They have been absent from that township continuously since the time they removed therefrom on February 29, 1929. They have been absent from that township continuously for more than one year and, hence, have lost their legal residence or settlement therein. It further appears from the stipulation of facts that George Marks and his family, during the year involved in this controversy, have resided longest in Colburn township. That is, they have resided there longer than they have in any other township, village or city in Ransom county. If this be so, they are proper charges for poor relief purposes of Colburn township. Comp. Laws 1913, § 2501, subd. 4; Burke County v. Brusven, ante, 1, 241 N. W. 82, supra.

It follows that the judgment appealed from must be and it is reversed, and the cause is remanded for further proceedings conformable to law.

BIRDZELL, NUESSLE, BURR and BURKE, JJ., concur.