[File No. 6508.]

NELSON COUNTY, NORTH DAKOTA, a Public Corporation, Respondent, v. WILLIAMS COUNTY, NORTH DAKOTA, a Public Corporation, and Elizabeth Kelly.

WILLIAMS COUNTY, NORTH DAKOTA, a Public Corporation, Appellant.

(276 N. W. 265.)

Opinion filed November 27, 1937.

*Walter O. Burk,* State's Attorney, for appellant.

*Olaf M. Thorsen,* for respondent.

CHRISTIANSON, Ch. J.   Nelson county brought this action against Williams county, under the provisions of chapter 119, Laws 1935, to "determine the question of legal residence" for poor relief purposes of one Elizabeth Kelly.   The action was instituted on or about the 25th day of January, 1937.   It is alleged in the complaint that the said Elizabeth Kelly, on or about July 8, 1936, made application in Nelson county for old age assistance; that she is without financial means to provide for herself and has no definite earning capacity and if permitted to remain in Nelson county is likely to become a public charge upon Nelson county.   It is further alleged that said Elizabeth Kelly had not acquired a residence in Nelson county for poor relief purposes on or prior to July 8, 1936, and that "she was at that time and still continues to be, a resident of Williams county for poor relief purposes."   In its answer Williams county admits that the said Elizabeth Kelly, on March 20, 1935, was a resident of Williams county and had resided therein for some four years previous to that time; but it denies that she is now a resident of Williams county or has a residence therein for poor relief purposes, and it alleges that said Elizabeth Kelly left Williams county on or about March 20, 1935, and that she has not resided in Williams county for more than one year immediately prior to the commencement of the action, and that at no time, since she left Williams county on or about March 20, 1935, has she received any aid whatsoever from any political subdivision of the state of North Dakota or the Federal Government or any of the various relief agencies of the Federal Government.

The trial court reached the conclusion that the said Elizabeth Kelly, on July 8, 1936, and at the time of the rendition of judgment in this case, had a legal residence in Williams county for poor relief purposes.   The court ordered judgment for the removal of Elizabeth Kelly from Nelson county to Williams county unless the two counties should enter into an agreement permitting said Elizabeth Kelly to remain in Nelson county; also that Williams county reimburse Nelson county for any support or relief Nelson county may have been required to furnish, or in the future may be required to furnish said Elizabeth Kelly, in event said counties shall effect an agreement whereby said Elizabeth Kelly is permitted to remain in Nelson county.   Judgment was entered accordingly and Williams county has appealed.

The material facts in this case are not in dispute. They are substantially as follows: On March 29, 1935, and for some four years prior thereto Elizabeth Kelly had a legal residence in Williams county. For sometime she operated a restaurant but had disposed of such business sometime prior to March 29, 1935. She had three daughters and three sons. One daughter resides at Williston in Williams county; one at Aneta in Nelson county and one at Hallock, Minnesota. One of her sons resides at Jamestown, in Stutsman county, North Dakota. It does not appear from the evidence that Elizabeth Kelly ever made her home with her daughter in Williston. On March 29, 1935, Elizabeth Kelly left Williams county and went to her daughter at Aneta in Nelson county where she remained for about a month. She then went to Hallock, Minnesota, and stayed with her daughter there and went back and forth between Hallock, Minnesota, and Aneta, North Dakota, living intermittently with her daughters at the two points until December 2, 1935, when she became ill and went to a hospital in Grand Forks, North Dakota, for treatment. She remained at the hospital in Grand Forks until December 16, 1935, when she went to Hallock, Minnesota, and stayed with her daughter there until February 12, 1936. On that date she went back to the hospital at Grand Forks and remained at the hospital until the 19th day of March, 1936, when she went to the Y. W. C. A. in Grand Forks and remained there until April 27, 1936. While at the Y. W. C. A. she was under doctor's care. On April 27, 1936, she went back to Hallock and stayed with her daughter there until June 11, 1936. On that day she came back to Aneta and has stayed with her daughter and son-in-law at Aneta in Nelson county since that time until the trial of this action on March 16, 1937, except for a period of four weeks beginning January 11, 1937, when she stayed with her son at Jamestown, North Dakota.

The sole question presented for determination on this appeal is whether, at the time this action was instituted, Elizabeth Kelly had a legal residence in Williams county within the purview of the laws of North Dakota relating to poor relief. If she had such residence, then the judgment appealed from is correct. If she had lost such residence and did not then have a legal residence in Williams county for poor relief purposes, the judgment is erroneous and must be reversed.

. So far as material in this case the laws of North Dakota relating to residence for poor relief purposes read as follows: ·

. "Residence may be acquired in any county so as to oblige such county to relieve and support the persons acquiring such residence in case they are in need as follows: . . .

"4. Each male person and each unmarried female over the age of twenty-one years, who shall have resided one year continuously in any county in this state, shall thereby gain a residence in such county. Every person who has resided one year continuously in the state, but not in any one county, shall have a settlement in the county in which he has longest resided within such year. Each minor whose parents and each married woman whose husband has no residence in this state, who shall have resided one year continuously in the state, but not in any one county, shall have a settlement in the county in which he has longest resided within such year. Every minor not emancipated and settled in his own right shall have the same settlement as the parent with whom he has last resided. The time during which a person has been an inmate of a hospital, poor house, jail, prison, or other public institution, and each month during which he has received relief from the poor fund of any county, and/or from funds provided by the State and/or by the Federal Government, or has received Mother's Pension, shall be excluded in determining the time of residence hereunder." Laws 1935, Chap. 119.

"Each residence when once legally acquired shall continue until it is lost or defeated by acquiring a new one in this state, or by voluntary absence from the county in which such residence had obtained for one year or more; and upon acquiring a new residence, or upon the happening of such voluntary absence, all former residence shall be defeated and lost, and the provisions of this section shall apply to cases of residence begun to be acquired or lost or defeated, as well heretofore as hereafter. Provided, that if within a year of such removal the county of former residence shall contribute to the poor relief of such person in the county to which he or she shall have moved, such absence from the county of former residence shall not be construed to be voluntary as that term is used in this act." Laws 1933, Chap. 97, § 4, subd. 6.

"Under the statutory provisions quoted above a person who has a

legal residence for poor relief purposes in a county may lose that residence in one of two ways: (1) by acquiring a legal residence in another county by residing there for more than one year; or, (2) by voluntary absence for more than one year from the county in which he had legal residence." Griggs County v. Cass County, 65 N. D. 608, 612, 260 N. W. 417, 419.

The terms "residence" and "legal residence" employed by the legislature in the laws relating to poor relief have reference to the status acquired by a person within a certain county so as to entitle such person to poor relief within such county. Burke County v. Brusven, 62 N. D. 1, 241 N. W. 82; Enderlin v. Pontiac Twp. 62 N. D. 105, 242 N. W. 117. When the statute speaks of a person "who shall have resided one year continuously in any county in this state," of the county in which a person "has longest resided within such year," and "voluntary absence from the county in which such residence had obtained for one year or more" it has reference to actual habitation or residence; that is, it means the county in which such person has actually lived.

In Enderlin v. Pontiac Twp. 62 N. D. 105, 117, 242 N. W. 117, this court said: "It will be noted that the 'legal residence' under the statutes relating to poor relief may be lost in a manner different from that in which legal residence under § 14, Comp. Laws 1913, or legal residence under the election laws of the state, may be lost. Thus, a person having a residence in this state under § 14, supra, or a person having the qualifications of an elector in any county in this state, does not lose his status as a resident, or as an elector, by voluntary absence from the county or the precinct in which he has a residence unless he actually abandons his residence therein and gains a residence elsewhere. He may be voluntarily, physically absent from the county for months and even years, on business or pleasure, and yet retain his residence therein. Popejoy v. Boynton, 112 Or. 646, 229 P. 370, 230 P. 1016. The residence once acquired under § 14, Comp. Laws 1913, can be changed only by the union of intent and act. A residence once gained can be lost only by the acquisition of another. Comp. Laws 1913, § 14 (subds. 3 and 7). But a residence under the laws of this state relating to poor relief becomes lost wholly without regard to the intention of the person if such person voluntarily absents himself from the county for one year or more. Kost v. Sheridan County, 46 N. D.

75, 179 N. W. 703, supra. See also Scott v. Clayton, 51 Wis. 185, 8 N. W. 171.''

It is undisputed that Elizabeth Kelly has been absent from Williams county since March, 1935. The trial court, however, held that such absence was not voluntary. In our opinion the holding of the trial court is without any support in the evidence. There is no claim that Elizabeth Kelly has received any assistance from Williams county at any time since she left in March, 1935, nor is there any claim that at any time during her absence from Williams county she has been an inmate of any public institution, that she has received a mother's pension or assistance from the poor fund of any county or from funds provided by the state or Federal Government for relief purposes. There is no claim and no showing that Elizabeth Kelly was induced, or required, to leave Williams county because of threats, compulsion, coercion, or external influence. The evidence discloses that she deliberately and by design and intention left Williams county, and has continued to remain absent therefrom, of her own free will and choice.

The term ''voluntary absence'' as employed in the statute, means that the absence from the county was of the free will and choice of the individual as contradistinguished from an absence produced as the result of threats, compulsion, coercion or restraint. ''One of the accepted meanings of the word 'voluntary' is 'done by design or intention; purposed; intended.' Federal Sav. & Ins. Co. v. Rager, 75 Ind. App. 295, 128 N. E. 773, 774.'' The word ''voluntary'' as applied to personal action means by the free exercise of one's own will; done by choice, or of one's own accord, as distinguished from action induced by compulsion. ''Voluntary'' means ''proceeding from the will; done of or due to one's own accord or free choice; unrestrained by external interference, force or influence.'' Century Dictionary.

In a memorandum opinion filed in this case the trial court says that ''it does not appear from the testimony that Elizabeth Kelly left Williams county with the intention of establishing her residence in Nelson county;'' and it seems to be inferred that in the absence of such intention, her absence from Williams county cannot be said to be voluntary, and that her former legal residence for poor relief purposes in Williams county would continue to exist until she abandoned

her residence in Williams county with the deliberate intention to establish, and actually established, a new residence elsewhere.

The trial court cites in support of its holding the decision of this court in Burke County v. Oakland, 56 N. D. 343, 217 N. W. 643. Some confusion seems to have arisen on account of some of the expressions in the decision on the petition for rehearing in that case. In that opinion reference is made to § 14, Comp. Laws 1913. What was there said was largely by way of illustration or argument and there was no intention to hold that the provisions of § 14 would supersede the provisions of the laws relating to poor relief. Immediately preceding the discussion regarding § 14 it was said:

"Under subd. 6 of § 2501, Comp. Laws 1913, residence 'may be lost by acquiring a new one in the state, or by voluntary absence from the county in which such residence had obtained for a period of one year.'

"Nyquist did not leave the county. He was in the county all the time, either in Thorson township, Cleary township, Oakleaf township or Powers Lake. The law fixes a period when absence from the county loses or defeats residence therein, but does not fix any period of absence from the township, but it does provide that a residence once legally acquired shall continue until it is lost, or defeated by acquiring a new one in the state."

Here there is a clear recognition of the fact that under the laws relating to poor relief a residence may be lost without regard to whether there was or was not an intention to establish a new residence in some other place.

As pointed out in the decision of this court in Burke County v. Brusven, 62 N. D. 1, 241 N. W. 82, supra, the decision in Burke County v. Oakland, was clearly correct, as the indigent person involved in that case had a legal residence for poor relief in a certain township "under any interpretation of the laws relating to residence." It was also pointed out in Burke County v. Brusven that "the controlling facts and the rule announced" in Burke County v. Oakland, "were epitomized in the Syllabus" of that case as follows:

"Under subd. 6 of § 2501, a residence once legally acquired continues until it is lost by acquiring a new one, or by voluntary absence from the county in which such residence is established for a period of

one year; and where a person has lived continuously for five years on his homestead, and thereafter rents the land, stopping there occasionally, building an addition to his house, digging stones on the land, going to the land, and looking after his share of the crop at threshing time, and there being no evidence that he was absent from the county for one year or that he established a new residence elsewhere, his legal residence on his homestead is not lost."

The rule that was thus announced in the Syllabus in Burke County v. Oakland, 56 N. D. 343, 217 N. W. 643, supra, is to the effect that a residence once legally acquired may be lost in one of two ways, either (1) by acquiring a new legal residence elsewhere, or (2) by "voluntary absence from the county in which such residence is established for a period of one year." This rule was recognized, applied and discussed at greater length in the subsequent decisions of this court in Enderlin v. Pontiac Twp. 62 N. D. 105, 242 N. W. 117, supra; Burke County v. Brusven, 62 N. D. 1, 241 N. W. 82, supra; and Griggs County v. Cass County, 65 N. D. 608, 260 N. W. 417, supra. In Enderlin v. Pontiac Twp. 62 N. D. 105, 242 N. W. 117, supra, we specifically held that under the laws of this state: "A person in order to acquire a 'residence' for poor relief purposes must reside continuously in the state for one year. A person who so resides acquires a 'legal residence' or 'settlement' within the purview of the poor relief laws, (1) in any county in the state in which such person *resides* continuously for one year; or (2) if such person does not reside continuously in any one county for a year a 'legal residence' or 'settlement' is acquired in the county in which he longest *resides* within such year. A 'legal residence' or 'settlement' thus once established, that is, the status thus created, may be lost or defeated: (1) by the acquisition of a new residence; or (2) 'by voluntary absence from the county in which such residence had obtained for one year or more.'"

We adhere to and re-affirm that statement.

It follows from what has been said that the trial court was in error in holding that Elizabeth Kelly had a legal residence in Williams county under the laws relating to poor relief. The judgment appealed from must be and it is reversed.

Morris, Burr and Nuessle, JJ., concur.