[File No. 6484.]

EDDY COUNTY, North Dakota, a Political Subdivision of the State of North Dakota, Respondent v. WELLS COUNTY, North Dakota, a Political Subdivision of the State of North Dakota, and Berta E. Baker, State Auditor of the State of North Dakota, Respondents,

and

BENSON COUNTY, North Dakota, a Political Subdivision of the State of North Dakota, Appellant.

(280 N. W. 667.)

Opinion filed June 17, 1938.

*Ole Ellefson,* State's Attorney, and *James A. Little,* for appellant.

*Edgar P. Mattson,* State's Attorney, for respondent Eddy County.

*Aloys Wartner, Jr.,* State's Attorney, and *B. F. Whipple,* for respondent Wells County.

NUESSLE, J. On October 5, 1935, Hjalmer Johnson, an indigent insane person was committed from Eddy county to the state hospital

for the insane. The question then arose between Eddy county and Wells county as to which county was responsible for his care and maintenance. So the state auditor, pursuant to the provisions of § 2576, Comp. Laws 1913, investigated the question of Johnson's residence and determined that he was a proper charge against Eddy county. Thereupon, pursuant to the provisions of § 2577, Comp. Laws 1913, Eddy county appealed to the district court. Thereafter Benson county was interpleaded. Trial of the issues was had in the district court and the court made its findings of fact and ordered judgment that Johnson was a proper charge against Benson county. The matter is here for review on appeal from the judgment entered accordingly.

There is no controversy as to the facts, which are as follows: Hjalmer Johnson was twenty-eight years old. He was an unmarried farm laborer. He had no fixed place of abode. For more than one year immediately prior to June 20, 1934, he had resided and had his settlement for poor relief purposes in Wells county, North Dakota. On June 20, 1934, he left Wells county and went to Benson county. He remained there continuously until February 25, 1935. On that date he left Benson county and went to Eddy county. He remained in Eddy county working as a farm hand, until October 5, 1935, when he was found to be insane and committed to the state hospital for the insane.

All the parties to this controversy are agreed that the responsibility for the care and maintenance of an indigent insane person is to be determined by the law fixing the responsibility for the care and maintenance of the indigent who are not insane. And the district court so held. This holding was correct. Chapter 38 of the Political Code, Comp. Laws 1913, is concerned with the police power of the state: Article 1 thereof, §§ 2496 to 2528, both inclusive, as amended (see chap. 97, Sess. Laws 1933, and chap. 119, Sess. Laws 1935) deals with the support of the poor. It placed the exclusive jurisdiction, control and administration of poor relief in the hands of the county commissioners of each county. Article 1a of said chap. 38, § 2528a, 1925 Supplement to the 1913 Comp. Laws, deals with the care of indigent and crippled children. Article 2 of said chapter 38, as amended, makes provision for the establishment of county asylums.

and poor farms under the directions of the boards of county commissioners. Article 3a, §§ 2546a1 to 2546a10, both inclusive, of the 1925 Supplement, deals with mothers' pensions. Article 4, §§ 2547 to 2567, both inclusive, Comp. Laws 1913, as amended, deals with the care of the insane. Article 5 (§§ 2568 to 2579, both inclusive,) as amended, provides that the counties of their residence shall be liable for the care and maintenance of insane persons. Section 2568 provides: "The expense for the care, board and treatment of all patients in the state hospital for the insane shall be a charge upon each county sending such patient or patients to the state hospital for the insane, as hereinafter provided for."

Section 2570 provides that when the superintendent of the state hospital has notice that a patient sent from one county has a legal residence in another county, he shall thereafter hold and keep such patient at the expense of and as from the latter county. Section 2572, 1925 Supplement, provides for the levying of a tax to cover the charge for the maintenance of the county's patients at the state hospital for the insane. Section 2576, Comp. Laws 1913, provides that when the question arises as to the county against which a patient is a proper charge, it shall be the duty of the state auditor to make investigation and determine such controversy, and § 2577 provides for an appeal from such determination.

It is clear to us that "legal residence" as used in the several sections of Art. 5, supra, means the same and is to be determined in the same manner as that term means and is determined in Art. 1, as amended, which deals with the support and maintenance of the poor. In this connection, see Hettinger County v. Stark County, 65 N. D. 654, 260 N. W. 698, where the question was as to the liability for the care of indigent and crippled children. In that case we said: "Since the relief afforded under this section (2528a, 1925 Supplement) is in the nature of poor relief, questions of residence arising thereunder must be determined according to the law determining the residence of poor relief applicants." See also Kost v. Sheridan County, 46 N. D. 75, 179 N. W. 703, where the question was as to how the residence of an applicant for mother's pension under subsection 5, § 2546a2, supra, should be determined. And we there held that the rules laid down in paragraphs four and six of § 2501, Comp. Laws 1913, should be ap-

plied in determining such residence. And courts in other jurisdictions having statutes identical with or similar to ours have held to the same effect. See Moody County v. Minnehaha County, 17 S. D. 331, 96 N. W. 698; Washington County v. Polk County, 137 Iowa, 333, 113 N. W. 833; Jackson County v. Hillsdale County, 124 Mich. 17, 83 N. W. 408; Louriston v. Swift County, 89 Minn. 91, 93 N. W. 1052; Clay County v. Adams County, 69 Neb. 106, 95 N. W. 58. This being so it becomes necessary to consider the provisions of the law fixing the residence or settlement of the poor for relief purposes. Subdivision 4 of § 4, chap. 97, Sess. Laws 1933, as amended by chap. 119, Sess. Laws 1935, provides: "Each male person and each unmarried female over the age of twenty-one years, who shall have resided one year continuously in any county in this state, shall thereby gain a residence in such county. Every person who has resided one year continuously in the state, but not in any one county, shall have a settlement in the county in which he has longest resided within such year. Each minor whose parents and each married woman whose husband has no residence in this state, who shall have resided one year continuously in the state, but not in any one county, shall have a settlement in the county in which he has longest resided within such year. . . . And subd. 6 of § 4 of chap. 97, Sess. Laws 1933, provides: "Each residence when once legally acquired shall continue until it is lost or defeated by acquiring a new one in this state, or by voluntary absence from the county in which such residence had obtained for one year or more; and upon acquiring a new residence or upon the happening of such voluntary absence, all former residence shall be defeated and lost, and the provisions of this section shall apply to cases of residence begun to be acquired or lost or defeated, as well as heretofore or hereafter. . . ."

This court has had occasion heretofore to construe and apply the foregoing statutes. See Nelson County v. Williams County, ante, 56, 276 N. W. 265; Grand Forks County v. Du Fault, 66 N. D. 518, 267 N. W. 136; Hettinger County v. Stark County, 65 N. D. 654, 260 N. W. 698; Griggs County v. Cass County, 65 N. D. 608, 260 N. W. 417; Ward County v. Ankenbauer, 65 N. D. 220, 257 N. W. 474; Burke County v. Brusven, 62 N. D. 1, 241 N. W. 82; Enderlin. v.

Pontiac Twp. 62 N. D. 105, 242 N. W. 117; Kost v. Sheridan County, 46 N. D. 75, 179 N. W. 703.

Under the undisputed facts in this case, Wells county was not liable for the care and maintenance of Johnson since he had lost his residence in that county by voluntary absence therefrom for more than one year. See subd. 6 of § 4, chap. 97, supra. Kost v. Sheridan County, supra; Enderlin v. Pontiac Twp. 62 N. D. 105, 242 N. W. 117, supra; Griggs County v. Cass County, 65 N. D. 608, 260 N. W. 417, supra; Nelson County v. Williams County, ante, 56, 276 N. W. 265, supra. So the issue of liability is between Eddy county and Benson county. Now Johnson was in Benson county from June 20, 1934, to February 25, 1935, or a few days more than eight months. He was in Eddy county from February 25, 1935 until October 5, 1935, or a few days more than seven months. But during the year immediately preceding the day of his commitment to the state hospital on October 5th, he had been longer in Eddy county than in Benson county. Chapter 119, Sess. Laws 1935, provides, among other things, that every person who has resided one year continuously in the state but not in any one county shall have his settlement in the county in which he has longest resided within such year. This provision is determinative of the issue between the two counties. "Such year" in this statute means the year immediately preceding the day of the application for relief. In Kost v. Sheridan County, 46 N. D. 75, 179 N. W. 703, supra, we construed and applied subds. 4 and 6 of § 2501, Comp. Laws 1913. Subdivision 4 then read: "Each male person and each unmarried female over the age of twenty-one years, who shall have resided one year continuously in any county in this state, shall thereby gain a residence in such county. Each minor whose parents, and each married woman whose husband has no residence in this state, who shall have resided one year continuously in any county in this state, shall thereby gain a residence in such county. Every person who has resided one year continuously in the state but not in any one county, shall have a settlement in the county in which he has longest resided within such year. . . ." And subd. 6 there considered was identical with subd. 6 of § 4 of chap. 97, Sess. Laws 1933, heretofore quoted. The question was as to the place of residence of an applicant for mother's pension. We there said: "Both ¶¶ 4 and 6 of § 2501, Comp.

Laws 1913, bear unmistakable evidence of legislative intention to fix the residence of a person for purposes of poor relief in a county where he shall have resided continuously for one year. That portion of the statute above quoted, which has reference to fixing the obligation for relief with respect to a person who has not resided in any one county for a year, was added by an amendment in 1907 (Sess. Laws 1907, chap. 183) when the period of residence required was changed from ninety days to one year. The purpose of this provision is evident. It is to fix the obligation as between counties, only with respect to persons who have not resided continuously in any one county for a year prior to the time the application is made. In such cases the applicant will be deemed to have a settlement in the county in which he has longest resided within the year, excepting from the computation any period during which he was an inmate of a public institution and each month during which he received support from the poor fund in any county. Any other construction would render the different provisions of § 2501 repugnant to each other. For instance, paragraph 6 of this section provides that 'each residence, when once legally acquired, shall continue until it is lost or defeated by acquiring a new one in this state, *or by voluntary absence from the county in which such residence had obtained for one year or more;* and upon acquiring a new residence, *or upon the happening of such voluntary absence,* all former residence shall be defeated and lost. And again in Burke County v. Brusven, 62 N. D. 1, 241 N. W. 82, supra, where the question was as to which township within the county of Burke was responsible for the maintenance of an applicant for poor relief, we said, construing the same statutes considered in the Kost Case: "Here there is no question but that the applicant for poor relief has a legal residence in Burke county and the question in controversy is whether he has a legal residence in the city of Columbus or in Fay township. But the legislature has said that this question is to be determined in precisely the same manner and by application of precisely the same rules as in determining in what county the applicant has a legal residence. In other words, where it is established that an applicant for poor relief has a 'legal residence' in a given county and is entitled to poor relief therein, the legal residence of such person is in any township, city or village therein, in which he has resided continuously

for more than one year; but if such person has resided in one or more townships, cities or villages within the county, but less than one year in any one of them, he has acquired a legal residence or settlement in the township, city or village in which he has longest resided within such year." And in the syllabus, ¶ 3, we stated the proposition thus: "Where it has been established that an applicant for poor relief has a legal residence in a given county and is entitled to poor relief therein the legal residence of such person is in any township, city or village in such county in which he has resided continuously for more than one year; but if such person has resided in one or more townships, cities or villages within the county but less than one year in any one of them, his legal residence or settlement is in the township, city or village in which he has longest resided within such year." And again, in Enderlin v. Pontiac Twp. 62 N. D. 105, 242 N. W. 117, supra, in construing and applying the same statutes, we said:

"It is argued that if the legal residence or settlement of George Marks and his family is held to be in Ransom county that it will be impossible to determine which township, city or village in that county is chargeable with furnishing them support under the poor relief laws. No difficulty exists upon this score. The same rule applies in determining a question as to 'legal residence' or 'settlement' where it arises between townships, villages or cities as where such question arises between counties. Burke County v. Brusven, 62 N. D. 1, 241 N. W. 82.

"From the stipulation of facts in this case it appears that George Marks and his family, prior to February (29?) 28, 1929, had a legal residence or settlement in Shenford township, Ransom county. They have been absent from that township continuously since the time they removed therefrom on February (29?) 28, 1929. They have been absent from that township continuously for more than one year and, hence, they have lost their legal residence or settlement therein. It further appears from the stipulation of facts that George Marks and his family, during the year involved in this controversy, have resided longest in Colburn township. That is, they have resided there longer than they have in any other township, village or city in Ransom county. If this be so, they are proper charges for poor relief purposes of Colburn

township. Comp. Laws 1913, § 2501, subd. 4; Burke County v. Brusven, 62 N. D. 1, 241 N. W. 82."

It follows that Hjalmer Johnson having resided in Eddy county the greater part of the year preceding his commitment to the state hospital for the insane is a proper charge against that county.

The judgment is reversed and the case remanded with directions that judgment be entered in accordance with this opinion.

CHRISTIANSON, Ch. J., and MORRIS and BURR, JJ., and GRIMSON, Dist. J. concur.

SATHRE, J. did not participate, Hon. G. GRIMSON, Judge of Second Judicial District, sitting in his stead.