[File No. 6876]

In re BOISE.

(11 NW(2d) 80)

Opinion filed September 13, 1943

*Vernon D. Forbes,* States Attorney and *Patrick T. Malloy,* Assistant States Attorney, for appellant.

*George S. Register,* States Attorney, *J. A. Hyland,* Assistant States Attorney, Burleigh County, *Odin J. Strandness,* Assistant States Attorney, Cass County and *C. F. Kelsch,* Assistant Attorney General, for respondents.

18

Burr, J. For some time prior to 1932, the mother of Michael Boise was a resident of Richland County and at all times involved here was unmarried. She became twenty-one years of age in March, 1932, and continued living with her parents in Richland County until July, 1933. She moved to Burleigh County and remained there until the forepart of March, 1935. She then went to Michigan, and lived with her sister until September 25, 1935; her child being born there on August 15, 1935. On September 25, 1935, the mother and this child came to Fargo and remained until January 30, 1936. She then left Fargo, returned to Richland County, and has lived there during the remainder of the time involved. In the meantime the child was left in charge of a welfare bureau in Fargo.

On August 23, 1936, a petition was filed with the County Court of Cass County, praying the child be committed to the State School for the feeble-minded at Grafton. An order of commitment was duly made and the child has been an inmate thereof ever since.

A controversy arising as to the responsibility of Richland County for the support of the child at this institution, the state auditor held a hearing and determined that Richland County was legally responsible, and from this determination Richland County appealed to the District Court. The Court confirmed the judgment of the state auditor and entered judgment accordingly. From this judgment Richland County appeals, specifying the court erred in holding Richland County responsible for the support of this child, and setting forth the issues as follows:

"1. In what county did Michael Boise, an illegitimate, feeble-minded child, have a residence for poor relief purposes on August 25th, 1936?

"2. Is Richland County legally responsible for the care and maintenance of Michael Boise at the State School at Grafton from the time of his commitment to said school on August 25th, 1936 ?"

Counsel for the state auditor files a brief in support of her decision and also adverts to the question of a "charge of the state at large;" but there is no suggestion that the child here was a "charge at large." Counsel for Richland County contends that no "voluntary absence" from Burleigh County on the part of the mother began until after she came back to North Dakota in September, 1935, and thereafter she was not "voluntarily absent" from Burleigh County for a year in the full meaning of this term when the proceedings were commenced in August 1936.

There is no dispute as to indigency or any other factor negating public relief or support; but Richland County claims the responsibility is that of Burleigh County, so the controversy is between these two counties. Cass County has no responsibility.

Subsection 3 of § 4 of chap. 97 of the Sess Laws of 1933 provides: "Illegitimate children shall follow and have the residence of their mother of the time of their birth, if she then has any within the state; . . ."

So far as the responsibility for the support of an indigent committed to the institution at Grafton is concerned, the principle set forth in Eddy County v. Wells County, 68 ND 394, 397, 280 NW 667, 668 applies. The responsibility is the same as that for an indigent of sound mind. See also Hettinger County v. Stark County, 65 ND 654, 260 NW 698.

Subsection 4 of § 4 of chap. 97 of Sess Laws of 1933, as amended by § 1 of chap. 119 of Sess Laws of 1935, provides: "Each male person and each unmarried female over the age of twenty-one years, who shall have resided one year continuously in any county in this state, shall thereby gain a residence in such county. Each minor whose parents, and each married woman whose husband has no residence in the state, who shall have resided one year continuously in the state, but not in any one county, shall have a settlement in the county in which he has longest resided within such year. Every minor not emancipated and settled in his own right shall have the same settlement as the parent

with whom he has last resided. The time during which a person has been an inmate of a hospital, poorhouse, jail, prison or other public institution and each month during which he has received relief from the poor fund of any county, shall be excluded in determining the time of residence hereunder."

The question of whether residence in this state was lost is one of the first to be determined. See Enderlin v. Pontiac Twp. 62 ND 105, 118, 242 NW 117, 123.

Though the mother was in Michigan for approximately seven months, she never lost her legal residence in North Dakota. By her sojourn in Michigan she did not cease to be a resident. The reason for her sojourn in Michigan is evident, and it is stipulated she went to that state "realizing that she would soon become a mother. . . ." She returned to this state about six weeks after the birth of the child. There is no question but what she was and is a resident of this state from prior to 1932.

It is the purpose of the statute, subsec 4 of § 4 of chap. 97 of the Sess Laws of 1933, as amended by § 1 of chap. 119 of the Sess Laws of 1935, to give relief to every actual resident of the State of North Dakota, but in order to entitle such person to relief he must have resided in the state for at least a year. After he has become a resident of the state and has resided here a year continuously he still is a resident until he gains a residence somewhere else, even though temporarily physically absent from the state.

But the responsibility for furnishing the relief is upon the counties and it will be noted that the statute, in dealing with the counties, places the responsibility upon the county in which the "settlement" is, for a year or more, or the greater portion in case of two or more counties. He is a resident of the state for the year but he may be a roving settler. In the case at bar, there is no suggestion that the woman involved lost her residence in this state. She lived for years in Richland County before she attained her majority. We do not know for how many years she lived in the state, but it was at least for some years prior to 1932. The trial court in the memorandum opinion states: "In the case at bar it appears to be conceded by all parties that (the woman involved) never lost her residence in the State of North Dakota." Ap-

pellant in his brief says the county "contends as stated by the Trial Court in the Memorandum Decision: 'That at the time of the birth of her illegitimate child she was a resident of Burleigh County, for poor relief purposes although at that time actually residing in the State of Michigan.' Appellant further contends that her residence in Burleigh County continued until after the birth of the child and that she was still a resident of Burleigh County. when she came back to North Dakota in September, 1935."

Again appellant says that manifestly the woman involved "can not be held to be a resident of the State of Michigan." We believe the appellant has the correct view with reference to being a resident of the state as the term is used in the law cited. During all the period from prior to 1932 until date the woman was a resident of this state, even though she might step outside of the state for a day, a week, a month, or be absent for six months for the specific purpose set forth in the findings.

There is no question but that the mother had settlement in Burleigh County in March, 1935, for relief purposes.

Subsection 6 of § 4 of chap. 97 of the Sess Laws of 1933 provides: "Each residence when once legally acquired shall continue until it is lost or defeated by acquiring a new one in this state, or by voluntary absence from the county in which such residence had obtained for one year or more; . . ."

There is no contention that the mother received relief from the county, during that period.

"Residence within a county does not necessarily mean physical presence within the confines of the county, or even that the abode must at all times remain in the county;" (Stutsman County v. Bowman County, 68 ND 699, 705, 283 NW 179, 182;) but as pointed out in this case cited, "the legal residence of an indigent for poor relief purposes is lost by voluntary absence from the county in which such legal residence obtained for more than one year." Mere physical absence for a day or for a short period is not necessarily proof of "voluntary absence" as that term is used with reference to the place of settlement for poor relief. It may be one of the factors taken into consideration in determining whether there was voluntary absence.

That the mother was voluntarily absent from Burleigh County for over a year is clear. She left that county in March, 1935. Her voluntary abandonment began then, she never returned, her loss of settlement in Burleigh County was complete in March, 1936, and the proceedings were not begun until August, 1936. As pointed out in Nelson County v. Williams County, 68 ND 56, 276 NW 265, "The term 'voluntary absence' . . . means absence pursuant to the free will and choice of the individual as contradistinguished from an absence induced by threats, compulsion, coercion or restraint. Such absence does not cease to be voluntary because the individual may not have formed, or carried out, an intention to establish a new residence elsewhere."

Enderlin v. Pontiac Twp. 62 ND 105, 117, 242 NW 117, 122 states: "When the statute speaks of a person 'who shall have resided one year continuously in any county in this state,' and of the county in which a person 'has longest resided within such year,' it has reference to actual habitation or residence, that is, it means the county in which such person has actually lived."

Responsibility for support is determined by residence in the counties and where a residence has been in two or more counties during the same year immediately preceding the commencement of the proceedings, the county responsible is held to be the county in which the person has resided for the longest period during that year.

The law does not require us to hold that the responsibility of Burleigh County continued from March 1935 to March 1936 and that when we construe the provisions of the law dealing with residences in different counties during one special year, we must begin that year at the period where Burleigh County's responsibility ended.

In ascertaining the year which determines the responsibility between counties, we take the year immediately preceding the day of the application for relief. See Eddy County v. Wells County, 68 ND 394, 400, 280 NW 667, supra. See also Kost v. Sheridan County, 46 ND 75, 78, 179 NW 703, 704.

The proceedings here were commenced August 26, 1936. By that time, the mother had voluntarily abandoned her settlement in Burleigh County for a period of a year and a half. The year immediately preceding the proceedings began August 26, 1935. During this year

immediately preceding the commencement of this proceeding, the mother was physically present in Michigan for a period of one month, and we may assume had a settlement in Burleigh County, lived in Cass County slightly over four months, resided in Richland County for almost seven months. During that year, she had not resided in any one county and therefore under the provisions of the statute she had "a settlement in the county in which she had longest resided within such year." Here the longest period was practically seven months and she lived this period in Richland County.

The judgment of the lower court is affirmed.

CHRISTIANSON, MORRIS, Ch.J., and BURKE and NUESSLE, JJ., concur.