[File No. 6654.]

ADAMS COUNTY, NORTH DAKOTA, a Public Corporation, Respondent, v. BURLEIGH COUNTY, NORTH DAKOTA, a Public Corporation, Appellant.

(291 N. W. 281.)

Opinion filed March 23, 1940.

*George S. Register,* State's Attorney, and *J. A. Hyland,* Assistant State's Attorney, for appellant.

*Henry Moen,* State's Attorney, for respondent.

BURR, J. The issue as between these two counties is largely one of fact; and a brief reference to the record will disclose the only real issue involved.

The testimony taken at the hearing in this proceeding shows that prior to June 25, 1937, one Hulm, with his wife and ten children, lived in South Dakota; Hulm is paralyzed and unable to do hard labor; he came to Bismarck in April of 1937 to seek employment, and at that time was promised work, told to go back to Perkins county and to come back in two weeks' time; he came back, remained for about six weeks and was told to go back and get his family and bring them to Burleigh county, which he did on June 25, 1937; he lived in Burleigh county from that time until August 29, 1938;—Hulm applied for work on W. P. A., was told he was a resident of South Dakota, and, without any order of removal from any court, the family was removed on August 29 by Burleigh county authorities to Adams county in this state; these same authorities then took them over to the office of the welfare board in Lemmon, South Dakota, told this board that they had just brought them over, but the board refused to allow the unloading of the goods, and ordered all back to North Dakota, though the family remained in Lemmon over night; on Au-

gust 30, 1938, the family was "shipped back to Burleigh county" and the first night there, stopped at the place of the person that drove them to Lemmon with their goods; Hulm went to the courthouse to see the welfare board and the state's attorney, was sent by the secretary of the welfare board of Burleigh county to what was known as Hill Crest Home, where the family was fed and given lodgings; they stayed there for two days, as they were told not to leave until called for; two days later the deputy sheriff of Burleigh county called for him, took him down to the courthouse with his wife, and at that time he was handed papers (evidently copies of the order of removal issued by the district court of Burleigh county), ordering them to remove to Perkins county and was told if he would not go, he would be taken back; no opportunity was afforded him to get an attorney; they were then returned to Hill Crest Home and told to stay there and get ready to leave for Perkins county; thereafter, by virtue of the order of removal, more particularly set forth hereafter, Sheriff Anstrom of Burleigh county, with his deputy, took the family and their goods from Hill Crest Home to North Lemmon in Adams county—the family in a car and their goods in a truck.

The testimony further shows that at the time Sheriff Anstrom was attempting to obey the order of the district court to remove the dependents to South Dakota, he telephoned to Sheriff Ginter of Adams county, asking him to meet him at North Lemmon on a matter of importance; that the two sheriffs met in accordance with the appointment, and at that time Anstrom stated to Ginter "he had a family there that they wanted to leave for a couple of days" and then Anstrom proceeded to find a place to unload their goods, met a young man by the name of Thompson, and through him made an agreement to have the household goods of the dependents stored in a garage belonging to Thompson's mother; that Anstrom left the family in the car, unloaded the goods from the truck, placed the goods in the garage, sent the truck away, padlocked the door of the garage, and handed the key to young Thompson, telling him "to keep the key for a couple of days, and those guys will be likely to move out." Of the goods, two dressers, a bed, and a table were broken and the woman's coat lost. At that time, Roy Hulm asked what he was going to do, as he had nothing to eat, that he was broke; Sheriff Anstrom gave him no answer, but "gave him

$5 and said, 'You can eat on this for a little while; you'll be taken care of a little better later on;' " he further told him "to go across the line and get something to eat." The record further shows that at that time Sheriff Anstrom unloaded the dependents from the car, left them standing on the street, just about dark, and started for home with his deputy. When leaving, Anstrom said to Ginter "he had to be going," and "Listen Ginter, we will have to leave these people here a couple of days and whatever you are out you send the amount of it and Burleigh county will take care of it." Ginter protested about leaving the family for relief, as Adams county had enough to do to take care of its own needy. No one in North Lemmon would give them even temporary lodgings, and the deputy sheriff of Adams county told them to go to Lemmon and get something to eat. The authorities there immediately ordered them back into North Dakota. It was only when the deputy sheriff undertook to supply their wants that these unfortunates, having no place to go for the night, stayed in a hotel in Lemmon for one night, and for a few days in some cabins, their wants being supplied by Adams county. The deputy sheriff of Adams county ordered some bread and butter for Hulm and his wife and children, and Ginter gave them some flour and oranges and butter; the secretary of the welfare board of Adams county gave them some foodstuff, $1.50 for lunch, and rented a place for them to remain for some time. The authorities of Perkins county served them with an order to leave, and the sheriff of the South Dakota county proceeded to remove them. Being under his care, the deputy sheriff of Adams county, who had some humanitarian instinct, chaperoned them while the sheriff of Perkins county removed them to Adams county. Adams county furnished them a home in Hettinger, and sent down to North Lemmon and retrieved their goods. Ever since the Hulms have been living upon the charity of Adams county.

It is only just to Sheriff Anstrom to state that he disputes the statements made to the effect that he promised Adams county would be reimbursed, but as to this issue, the district court of Adams county found the facts as hereinbefore set forth. This finding has ample support in the record and we see no reason for holding otherwise. They are, therefore, the facts as we find them.

It is the further claim of Burleigh county that during the year's

residence in Burleigh county, the Hulms were for a portion of the time supported by Perkins county, South Dakota, under a fraudulent agreement with the Hulms to thus enable them to become citizens of Burleigh county for relief purposes. There is nothing in the testimony taken to substantiate this. It is true that in the copy of the order of removal issued by the district court of Burleigh county, there is a statement to that effect, and this copy is attached to and made a part of the return which Burleigh county made to the order to show cause. Such finding, however, is not binding in this case, so far as Adams county is concerned.

The county of Adams applied to the district court for an order to show cause, directed to the Hulms and to Burleigh county requiring them to show cause why the Hulms should not be returned to Burleigh county, and why the latter county should not reimburse Adams county for any disbursements it had made on and in behalf of the dependent Hulm and his family.

Burleigh county made a special appearance, objecting to the jurisdiction of the court to issue such an order on the ground that Burleigh county did not concede the residence of the Hulm family to be in Burleigh county, that the order requires Burleigh county to show cause why it should not pay a money judgment to be entered by the court, and that the only method to determine such a matter is through an action commenced by the service of a summons and complaint on Burleigh county. This special appearance was overruled, and in its return to the order to show cause, Burleigh county contends the legal residence of Hulm and his family was not in Burleigh county and that this had been determined by the district court of Burleigh county in a proceeding in which the order to remove Hulm and his family to South Dakota was issued.

It is difficult for the writer of this opinion to pass calmly and dispassionately upon the facts in this case and the law governing the same. One would fain suppress much of the evidence, but necessary facts must be set forth. To the credit of the government of this country and the general attitude of our people toward the poor and unfortunate, it may well be said few records show any such callousness toward human beings as this controversy between South Dakota and North Dakota discloses. The case is an illustration of the extent to which

"man's inhumanity to man" may be carried. Human beings are shifted around like so much cargo. Somewhere and somehow the well springs of humanity and brotherhood appeared to be dried up. Sick and impoverished creatures against whom there is no indication of crime, laziness, or willfulness, have no place to lay their weary heads, except such as the generosity of Adams county gives them as a mere subsistence in a situation not of its own making, and for which it is not responsible. The callous indifference of South Dakota seems scarcely credible in this age.

But though this may have incurred expense for Burleigh county, that county may not wash its hands of its responsibility by dumping the human freight onto Adams county. If there be any controversy between any of the counties of North Dakota and the state of South Dakota as to responsibility in this matter, it is a controversy between Burleigh county and South Dakota.

The proof furnished by both counties shows that the Hulm family had lived in Burleigh county for over a year. They are in this state, and as shown by the decisions of this court (Enderlin v. Pontiac Twp. 62 N. D. 105, 242 N. W. 117; Griggs County v. Cass County, 65 N. D. 608, 260 N. W. 417; Grand Forks County v. Du Fault, 66 N. D. 518, 267 N. W. 136; Sisters of Mercy v. Ramsey County, 68 N. D. 344, 279 N. W. 759) emergency relief and such other relief as is furnished to them in North Dakota must be furnished by Burleigh county. There is no issue here as to the dependents being residents of Adams county. In so far as the counties of North Dakota are concerned, even though Burleigh county may have been subjected by the relief authorities of South Dakota to an unjust burden, it cannot pass this on to Adams county. Clearly the officials of Burleigh county recognized this because of the agreement entered into between the two sheriffs for the temporary support of these unfortunate people. The subterfuge sought to be injected here by Burleigh county that the family was taken voluntarily to the north side of the imaginary line existing between South and North Dakota, shooed over into Perkins county, driven back into North Dakota, thereafter returning to Burleigh county, and again being taken by the sheriff to the north side of this imaginary boundary line and left with $5 and instructions to

go over and get something to eat, and thereafter, when they returned they were citizens of South Dakota, does not, in any way, shift the burden from Burleigh county to Adams county. One may readily understand why the overburdened relief officers of Burleigh county were determined not to undertake obligations not resting upon them; but the primary obligation is theirs and until these needy people are returned to and received by South Dakota, their obligations to the public at large are not discharged. There is no rule of comity between the two states shown to us whereby residence in dispute between the states may be determined. As set forth in the decision cited, the burden of support is placed by the state upon the county, and unfortunately for Burleigh county, this is the county of the dependents' residence, so far as the counties of North Dakota are concerned. As between the two counties, it is clear that Adams county is entitled to recover from Burleigh county for such sum as was actually and necessarily expended in the support of these people under the agreement made with Burleigh county, and we so decide.

On the order to show cause, Burleigh county made a special appearance, alleging that the district court of Adams county had no jurisdiction to issue the order made, as no action had ever been commenced and Burleigh county did not concede the legal residence of the Hulms to be in Burleigh county. This appearance being overruled, Burleigh county made a return, denying the legal residence of the Hulms was at any time in Burleigh county, alleging that they were voluntarily removed by an employee of Burleigh county welfare board to Perkins county, but thereafter returned to Burleigh county upon the order of the welfare board of Perkins county; that the question of their legal residence had been judicially determined by the district court of Burleigh county proceedings instituted against the dependents, and they were found to be residents of Perkins county, South Dakota; that an order was made requiring the Hulms to return to Perkins county, and that they voluntarily entered into Perkins county after the execution of said order.

A copy of the order of the district court is attached to the return, and in this it is shown the district court of Burleigh county found that the dependents had been sent to Burleigh county by the authorities of

Perkins county upon an agreement between the county and the dependents that Perkins county would support them in Burleigh county; that this was done designedly and intentionally for the purpose of attempting to relieve Perkins county of further liability, and to enable the dependents to acquire residence in Burleigh county. The order then required the sheriff of Burleigh county to forthwith take and convey these dependents "To the state line between North Dakota and South Dakota, at a place nearest the said Perkins county, South Dakota, the place of legal residence of said defendants for relief purposes as aforesaid." The return of the sheriff is attached, showing that he took the dependents to the state line and left them there at North Lemmon in Adams county.

As pointed out in Nelson County v. Williams County, 68 N. D. 56, 276 N. W. 265, the word "residence," when poor relief is concerned, has reference to the place where a person actually lives as distinguished from his domicile.

The record here shows that during the month of August, 1938, the county welfare board of Burleigh county furnished emergency relief to the Hulms to the extent of $13.10, but by this time the Hulms had resided in Burleigh county for over a year. Grand Forks County v. Du Fault, 66 N. D. 518, 267 N. W. 136, is a case wherein it was claimed that the indigent persons involved were in fact residents of Marshall county, Minnesota. However, they had not received relief from Marshall county for over a year, and during that year, the poor involved had not been in any hospital, poorhouse, or other public institution, and "None received relief from the poor fund of any county, or from the fund provided by the state or by the Federal Government, or had received a mother's pension." It was held they were residents of Grand Forks county, this being the county in which they had lived for a year after their removal from Minnesota.

Brushing aside all technicalities, and attempts at subtle distinctions, the fact remains as shown by the claims of both counties, that in so far as Adams county is concerned, the Hulms resided in Burleigh county for over a year without receiving any support whatever from Burleigh county or any other county in the state of North Dakota, and that the Hulms were forcibly removed from Burleigh county to Adams county, and left there by Burleigh county, under an agreement made

by Sheriff Anstrom to pay for their support, and while in the custody of the officers of Burleigh county, expense has been incurred by Adams county for their support. These people are still in the custody of the sheriff. Had the sheriff of Burleigh county, during the time he was removing the Hulms to South Dakota, been required to remain somewhere over night en route, he would have been required to furnish food and sleeping quarters to the Hulms during that time. Without doubt, the reasonable cost of this service would be a legitimate charge against Burleigh county in his expense account. It is clear, therefore, that Burleigh county is liable to Adams county for the support of this family, and must receive them, unless satisfactory arrangements are made between the counties themselves.

However, the amount of this support cannot be determined on this order to show cause, as it is in dispute; but this proceeding does determine that the liability for actual and necessary relief is that of Burleigh county, and unless the same is satisfactorily settled by the authorities of the two counties, Adams county is at liberty to bring a direct action to recover the full amount shown to be reasonable and necessary.

The order of the district court is modified to the extent of striking out the provisions requiring the payment of $164.73,— the determination of this amount to be made later,—and with this modification the order is affirmed.

NUESSLE, Ch. J., and CHRISTIANSON, MORRIS, and BURKE, JJ., concur.