## TOWN OF SMILEY v. VILLAGE OF ST. HILAIRE AND OTHERS.[1]

June 19, 1931.

No. 28,435.

[1]Reported in 237 N. W. 416.

534

 

*Paul A. Lundgren,* for town of Rocksbury, appellant.
*Theodore Quale,* for village of St. Hilaire, respondent.
*Perl W. Mabey* and *H. O. Chommie,* for plaintiff.

WILSON, C. J.

The town of Smiley brought this action against the village of St. Hilaire, the town of Sanders, the town of River Falls, and the town of Rocksbury to have determined the settlement of Henry Seeland, a pauper. These municipalities are all in Pennington county, wherein the town system prevails.

For many years immediately prior to February, 1927, Seeland was a resident and voter in the town of Rocksbury, and during the last nine years of that period he lived with his brother-in-law, Bennie Johnson, then a resident of that town. In February, 1927, Johnson removed from said town of Rocksbury to the village of St. Hilaire. Seeland went with him but remained there only one week. Seeland then stayed with his brother Oscar, in Hazel township until May 17, 1927, when he was taken to the University Hospital in Minneapolis, where he remained until October 12, 1927, after which he stayed with a brother-in-law, Albert Anderson, in the town of Sanders until February 14, 1928, when he returned to said hospital and remained there until March 26, 1928. He then returned to Pennington county, staying again with Albert Anderson until May 1, 1928, when he returned to the home of Bennie Johnson in the village of St. Hilaire, where he remained continously until October 14, 1929, or for a period of one year, five months, and 13 days. Bennie Johnson then moved to a farm in the town of Smiley. Seeland went with him and remained with him in that town until January 1, 1930, when he was taken to a hospital at Thief River Falls in Pennington county, where he remained until March 8, 1930. He then returned to Bennie John-

son's home in the town of Smiley, where he was at the time of the commencement of this proceeding. No public aid had been received by Seeland at the time of the commencement of this proceeding.

The court found that Seeland had a settlement in the town of Rocksbury, which has now appealed from an order denying its motion for a new trial. If the court's holding is error the settlement would be in the village of St. Hilaire, which now stands as respondent herein, the other municipalities being in the clear.

G. S. 1923 (1 Mason, 1927) § 3161, in part provides:

"Every person, except those hereinafter mentioned, who has resided one year continuously in any county, shall be deemed to have a settlement therein, if it has the county system; if it has the town system, he shall have a settlement in the town, city or village therein in which he has longest resided within such year. Every person who has resided one year continuously in the state, but not in any one county, shall have a settlement in the county in which he has longest resided within such year, if it has the county system; if it has the town system, his settlement shall be in the town, city or village therein in which he has longest resided within such year. The time during which a person has been an inmate of a hospital, poorhouse, jail, prison, or other public institution, and each month during which he has received relief from the poor fund of any county or municipality, shall be excluded in determining the time of residence hereunder. * * *"

The correctness of the judgment herein depends upon the word "resided." What is its meaning?

The word "reside" has two quite distinct meanings. The one legal and technical; the other personal, actual or physical habitation of a person. Where a person lives with his family at an established home, the place where he "resides" is clear. That is his technical legal residence. Such residence embraces two elements: first, residence; second, the intention to remain there permanently for an unlimited time. To "reside" in such manner gives a domicile, though the term domicile is not used in our relief statute. That is

also the place of his actual or physical habitation. A person who has no such fixed place or domicile wherein he "resides" but dwells in hotels, boarding houses, or the homes of others as suitable to his employment or convenience also "resides" where he actually or personally lives. Indeed, he may with his family occupy a rented house and be within such meaning of the word. He simply lives at the particular place. He has not established a domicile. Such residence under our poor laws is temporary and continues so regardless of intention until it has ripened into such domicile. One may have a residence before he acquires a domicile. Yale v. West Middle School Dist. 59 Conn. 489, 22 A. 295, 13 L. R. A. 161. Domicile is residence, but residence is not always domicile. Kelsey v. Green, 69 Conn. 291, 37 A. 679, 38 L. R. A. 471. He may have such legal residence or domicile with his family and such actual or personal residence away from his home. In such event the word "reside" may be correctly used to denote either the technical legal or the personal residence. The word "reside" is often used to express a different meaning according to the subject matter.

We are here dealing with a humane law in relation to the support of paupers to prevent as far as possible any person under any circumstances from suffering for the necessities of life. There are apparently reasons why the legislature did not mean to restrict the word "reside" to its technical legal meaning, which would refer to the place where one establishes his abode, makes the seat of his property, and exercises his civil and political rights. Indeed, the statute contemplates a plan to deal with the unfortunate and to fix their "settlement," which of course sounds in residence but may rest upon facts insufficient to constitute the technical legal residence. Settlement is the place where the pauper has a legal right to support. In re Leslie, 166 Minn. 180, 207 N. W. 323.

It has been said by us that the one year mentioned in the statute refers to the one year immediately preceding the commencement of the proceedings. Village of Grove City v. Township of Manannah, 182 Minn. 197, 233 N. W. 875. See County of Douglas v. Township of Dead Lake, 179 Minn. 251, 228 N. W. 929. These two cases

were apparently but not necessarily decided under the assumption that the word "reside" merely meant living in the particular place. The meaning of the word "reside" was not there involved.

The statute anticipates relief and burial and provides recovery therefor if the responsibility belongs to relatives or to some other municipality. The spirit of the statute seems to be that if the pauper is within the particular municipality and in the necessitous circumstances, he is, for the purpose of the statute, a resident thereof unless he is subject to removal to his legal settlement as provided by the statute.

If the word "reside" meant domicile, as that term is hereinbefore applied, it is difficult to see the purpose of the exceptions to the statute. No domicile can be acquired except by choice. If the word is to be construed as to require the pauper to have such technical legal residence as substantially to constitute him a voter, the exceptions in the statute are superfluous.

If the word "reside" is construed to mean the technical legal residence, there was little occasion to say that "he shall have a settlement in the town, city or village therein in which he has longest resided within such year." Under such construction it would be awkward and burdensome for the local authorities, charged with the responsibility involved, to ascertain the secret, but perhaps controlling, intention of the pauper, who might be absent most of the time from the town upon which he might by declaration place the burden. If this is possible a municipality might not be able to ascertain the intention and state of mind of the pauper in time to avoid the burden, as the plaintiff did in this particular case.

Our statute permitting an action of this character to be brought is in substance the same as statutes in some jurisdictions which provide for the service of a warning to depart and thereby prevent the particular person from gaining a settlement by residence. If the pauper's intention is to control, he may readily nullify the literal meaning of the statutory provision making the municipality, wherein "he has longest resided within such year," liable. In some states the statute defines the meaning of the word "residence" as used in the poor laws.

The statute in Connecticut provided. "that when any pauper in any town shall be insane, a selectman of such town may apply to the court of probate of the district wherein such pauper resides, for his commitment," etc. It was held that "any pauper who is found in any town in a state of insanity is thus made a proper subject of such an application," and the court said:

"It is of no consequence whether he has been there an hour or a year. If he be, in fact, in the town, in a state of insanity, he resides there for the time being, within the meaning of the statute. The object of the proceeding is to put the pauper, as soon as possible, into a hospital where he can secure proper care and treatment. The humane purpose of the legislature might often be defeated, if only a selectman of that town, perhaps a distant one, where the pauper statedly resided, or to which he was legally chargeable as a settled inhabitant, could act." Connecticut Hospital v. Town of Brookfield, 69 Conn. 1, 3, 36 A. 1017, 1018.

It is suggested that the pauper in the instant case never established a legal residence at any place after leaving the town of Rocksbury. The record shows that when he left Rocksbury he did not think anything about making a residence anywhere else; that he did not know exactly where he figured his home was; that he did not leave the town of Rocksbury because he intended to change his residence; that he did not vote in the village of St. Hilaire because he did not think he "belonged right there to vote." Of course if we consider the word "reside" as having reference to a legal residence, it would be important to consider whether Seeland had any animo revertendi. But to where was he to return in Rocksbury? He had no home there. His relatives were not there. He had no place in Rocksbury where he kept his clothes. He had no property ties there. He had no commercial or business contact to prompt him to retain his legal residence there. Perhaps the record would support a finding that he has never established a residence elsewhere under the technical legal sense, yet the place where a person lives is prima facie taken to be his legal residence

unless the fact be established to the contrary. But as indicated, we do not think this to be the spirit and meaning of the statute.

It seems to us that the statute would be more workable if the word "reside" is construed to relate to a temporary living. Perhaps we could say the statute has reference to where the person existed. We construe the statute as meaning that the pauper's settlement is where he has lived longest within such year regardless of his intention. It follows that the burden herein belongs to the village of St. Hilaire.

Reversed.