MARY PALUMBO v. CITY OF ST. PAUL.[1]

December 23, 1932.

No. 28,982.

*Keefe & Fallon,* for relator.
*Lewis L. Anderson* and *Edwin Murphy,* for respondent.

HILTON, J.

Certiorari to review a decision of the industrial commission denying relator compensation.

[1]Reported in 246 N. W. 36.

Relator was a dependent (sister) of Joseph Palumbo, deceased employe. On January 20, 1931, while in the employ of the city of St. Paul and at work in a sewer, he sustained accidental injuries. The extent of the injuries will hereinafter be referred to.

The referee awarded compensation. He found:

"That on said date [January 20, 1931] said employe suffered an accidental injury arising out of and in the course of his said employment by reason of a flood in a sewer in which he was working, carrying him a considerable distance and inflicting upon him numerous bruises and lacerations on his head and neck, which trauma aggravated a prior cancerous condition in his neck."

On appeal, the industrial commission, upon the same record as that before the referee, denied compensation. It found:

"That on said date, to-wit: the 20th day of January, 1931, employe suffered an accidental injury arising out of and in the course of his employment while working in a sewer in said City of St. Paul, thereby sustaining some scratches and bruises, which said scratches and bruises were not of a serious nature and said employe was not disabled by reason thereof for a period exceeding one week, * * *."

It also found:

"That said employe, prior to the time of said injury on January 20, 1931, was suffering from a cancerous condition and thereafter and on the 11th day of May, 1931, died from said cancerous condition, but that such cancerous condition was not the result of said accidental injury and was not aggravated thereby."

There were controverted questions of fact, the principal ones being as to whether the employe as a result of the accident sustained any injury to his neck by laceration, cut, or other trauma; and whether or not a cancerous condition existing prior to the time of the injury, and from a recurrence of which he later died, was the result of such injury or aggravated thereby.

Two witnesses, nephews of deceased, testified that during the few minutes that Palumbo was in his own home after the accident and prior to his removal to the hospital they saw a cut on the right side

of Palumbo's neck which was three-fourths of an inch to an inch long, the depth of which they did not notice; that this cut was coated and crusted over with blood. They were the only ones testifying as to a cut on the neck. Two other of relator's witnesses who were present when Palumbo was taken out of the sewer testified that they did not see any cut on the neck and saw only a gash over the eye. All four of them stated that they saw cuts on the eyelid and blood on Palumbo's head, face, neck, and clothes.

Upon being taken to the hospital Palumbo was attended by physicians. He remained there less than an hour. The hospital record thereof showed only that there were some scratches on the head and a cut over the eye. No mention was made therein of any cut or other injury on the neck or of any treatment thereof. Doctors testified in effect that if there had been such an injury of the neck an examining hospital physician would not have overlooked a thing so apparent and would have treated it and made a notation thereof in the record. There was testimony that a failure so to do would be most unusual. The commission was justified in finding as it did that there was no injury whatever to the neck.

In August, 1930, Palumbo had rather an extensive cancer of some standing on the lower lip. On August 25 and September 10 of that year operations were performed. At the first the glands were dissected from his neck; at the latter the lower lip was removed and a plastic operation performed to cover the effect left by the removal of the lip. A severe recurrence of the cancer appeared in March, 1931, and a further operation was then had. Palumbo died on May 11, 1931. The eminent and experienced doctor who operated on each of the occasions testified that evidently the cancer germs had not all been removed at the time of the first operations. None of the other testifying physicians had ever seen Palumbo.

The two medical experts testifying for relator and the two for the city agree that a cancerous condition might normally recur, as did this one, in five or six months from the first operations.

The medical testimony relative to cancer, its causes as far as known, the effect or lack of effect of trauma, if any, thereon, were

somewhat in dispute. The commission could have believed either line of testimony. It is to be noted, however, that both of the medical experts for relator, in giving opinions as to the effect of employe's injuries upon a preëxisting cancerous condition, predicated their answers upon hypothetical questions which assumed that there was the claimed injury to the neck. The doctor who performed the operations frankly admitted that if there was no neck injury and only the lacerations on the head and the cut on the eye, the existing cancerous condition would not be aggravated. If, as the commission had a right to believe, there was no injury to the neck, the opinion evidence based on the supposition that there was such an injury was without weight.

The holding in Jones v. Excelsior Laundry Co. 183 Minn. 531, 532, 237 N. W. 419, controls in this case. It was there stated, with numerous citations of authority, that:

"A finding upon a question of fact cannot be disturbed unless consideration of the evidence and the inferences permissible therefrom clearly requires reasonable minds to adopt a conclusion contrary to the one at which the commission arrived." See also Zitzman v. Macht, 187 Minn. 268, 245 N. W. 29.

On the record we of necessity hold that the findings and conclusions of the industrial commission must be sustained.

Affirmed.