# TOWNSHIP OF EQUALITY v. TOWNSHIP OF STAR.[1]

June 18, 1937.

No. 31,287.

*Paul A. Lundgren* and *Lincoln Arnold,* for appellant.
*Fred L. Farley* and *Carl Brink,* for respondent.

[1]Reported in 274 N. W. 219.

JULIUS J. OLSON, JUSTICE.

The appeal is from a judgment determining that the legal settlement for poor relief purposes of one Gunlekson was in defendant township. The suit was brought to establish such settlement pursuant to the provisions of 1 Mason Minn. St. 1927, § 3161-2. The cause was heard by the court and findings made sustaining plaintiff's position. As there is neither settled case nor bill of exceptions, our only concern is whether the findings of fact sustain the conclusions of law and the resulting judgment. Defendant fully realizes this situation, but insists that measured by this test the legal conclusion reached by the court is not so sustained.

The facts found may be thus summarized: Plaintiff township lies within Red Lake county, defendant within Pennington county. The township system of caring for the poor existed in both except that as to Pennington the county system existed between the first Monday in January, 1933, and the same day in January, 1935. The involved poor person has been unable to support himself over a period of years, in fact ever since 1930. At the time of the hearing he was 72 years of age. He regularly received aid from Star township as a poor person from 1930 until the county system in Pennington county was adopted. From that time and until April 1, 1934, he received aid from that county. The aid was in the form of monthly payments of definite amounts to the persons at whose homes he was living. His place of abode and legal settlement was in the town of Star until June 23, 1933, and has there remained unless changed later by the further facts found by the court. At that time and with the consent of the person having charge of poor relief for the county, he was taken to the home of one Krosen in plaintiff township, but Pennington county continued paying for his support. It is well also to note that next prior to June 23, 1933, he had actually lived in Polk county over a period of 21 months, but during all of that time he received aid as a poor person from the defendant township. The court also made this significant finding:

"That when Gunlekson moved to the Krosen home in Red Lake county, there was no intention to change his residence from Pen-

nington county; and the move was made in the belief that aid would continue to be given by Pennington county or the town of Star."

On April 1, 1934, the state emergency relief administration took over the poor relief of both counties. Krosen was paid for Gunlekson's support for April, 1934, through the Pennington county office. Through the Red Lake county office he was paid from May to December, 1934. Thereafter and until June, 1935, the Pennington county office made the payments, at which time the state administration in both counties was discontinued and the old system of caring for the poor was resumed. The present proceeding was begun in September, 1935. So the question presented is whether the aid received from the state administration, upon the facts hereinbefore stated, should be construed as the equivalent of changing Gunlekson's settlement for poor purposes from Star township to that of the plaintiff. The total number of months during which the state furnished the aid to this and other paupers in these counties was approximately 14 months. During that time Gunlekson was physically present at the Krosen home in plaintiff township. Defendant's position is that as a matter of law, upon the facts stated, there was established a "settlement" of this poor person in plaintiff township and that the court was in error in holding otherwise.

Many cases have been before this court involving pauper settlement. Defendant cites several of them and seems to place its heaviest reliance upon Town of Smiley v. Village of St. Hilaire, 183 Minn. 533, 237 N. W. 416, 417, and State ex rel. Timo v. Juvenile Court, 188 Minn. 125, 246 N. W. 544, 545.

In the Smiley case the pauper had lived in various townships prior to the time the proceeding there involved was brought. Also important to note is the fact that in that case the township of Smiley (in which he was living when the proceedings were begun) was not involved on the appeal, the controversy being limited to the township of Rocksbury and the village of St. Hilaire. The facts there were that the pauper lived continuously for almost a year and a half in St. Hilaire, staying with one Johnson. This condition

existed until October 14, 1929, at which time Johnson moved to the township of Smiley, the pauper going with him and there remained until January 1, 1930, when he was removed to a hospital in Pennington county, where he remained until March 8, 1930. He then returned to "Johnson's home in the town of Smiley, where he was at the time of the commencement of this proceeding. *No public aid had been received by Seeland* [the pauper] *at the time of the commencement of this proceeding."* (183 Minn. 534, 535.) The court, in view of these facts, came to the conclusion that the pauper in fact had a "settlement" in St. Hilaire as distinguished from a "fixed place or domicile" in Rocksbury, where he had lived over a period of considerable time prior to the dates hereinbefore mentioned.

In the Timo case the question of "residence" as distinguished from "settlement" was thoroughly discussed. That case arose under the mother's pension act. The distinguishing facts there appearing from those found in this case are [188 Minn. 127]:

"* * * on the date of her petition *relator had been a resident of Wadena county for more than a year.* All other conditions precedent established, she was entitled to an award if her residence in the county had continued there for a year or more. * * * There is no question of the right of the family, no one having objected, to remove from one county to the other. *Neither is there question as to the fact or good faith of their intention to make their home, and so establish residence, in Wadena county, when they moved there April 6, 1931.* * * * Residence alone does not always make settlement. It is not enough to entitle a poor person to relief, other than temporary, in the town or county of residence at the time being. There must be the added elements necessary to convert that residence into settlement under the poor laws." (Italics supplied.)

The court thereupon discussed In re Settlement of Skog, 186 Minn. 349, 243 N. W. 384, pointing out the distinctions between the mother's pension act and the law relating to paupers, amongst other things saying: "the mother's pension statute is no part of our poor

law, although in result it provides public aid to the needy. The beneficiaries are the children rather than the mother. It contemplates an investment in youth, their education and proper upbringing, and so is prospective in operation, benefit, and social return to a degree not found in the poor laws." (188 Minn. 128.)

The facts in this case are so essentially different from those presented in the two cases mentioned as to make them of little aid to a solution of our present problem. The present fact situation is such as to leave no doubt in our minds that the mere fact of the state taking over, during periods of distress and for the time being only, the burdens of relief for poor persons was not intended to, nor did it, accomplish a change of "settlement" of such poor persons who were legal charges against any particular municipality. Such result is unthinkable and would obviously resolve itself into gross injustice. If for the purpose of accomplishing beneficial results and to save expense the state had established a place centrally located and poor persons from various counties had been placed there during the relief administration set-up, will anyone contend that "settlement" was thereby changed from the former "settlement" of such person? Or if, as suggested by the court, Gunlekson had been taken sick and had been removed to the University Hospital in Minneapolis for treatment and there kept until June, 1935, can it be said within reason or common sense that Hennepin county would be charged with his further keep as a poor person?

█ To adopt such construction of the statute as defendant contends for "would result in absurdity, injustice or inconvenience." As such it "is to be avoided if the language used will reasonably bear any other construction." 6 Dunnell, Minn. Dig. (2 ed. & Supps. 1932, 1934) § 8947, and cases cited under note 49. "The thought behind the phrase proclaims itself misread when the outcome of the reading is injustice or absurdity." Surace v. Danna, 248 N. Y. 18, 21, 161 N. E. 315, 316. "What is not within the spirit of a law, is not within the law, although within the letter of it." Board of Supervisors of Ramsey County v. Heenan, 2 Minn. 281, 291 (330). "A rigid and literal reading would in many cases defeat the very object of the statute, and exemplify the maxim that, 'the letter

killeth, while the spirit keepeth alive.'" 6 Dunnell, Minn. Dig. (2 ed. & Supp. 1932) § 8943.

■ The legislature has placed the present issue at rest by Ex. Sess. L. 1935-1936, c. 68, 3 Mason Minn. St. 1936 Supp. § 3161. That chapter, we think, was not intended to change existing law but rather to so clarify it as to remove all doubt and uncertainty. "The operation of statutes is often extended, by construction, to matters of subsequent creation and applied to conditions that accrue after their passage, as well as to those that existed before." 6 Dunnell, Minn. Dig. (2 ed. & Supp. 1932) § 8943.

Judgment affirmed.