[1] Reported in 16 N.W.2d 902.
The city of Minneapolis instituted this proceeding to determine the poor relief settlement of Maggie Peniondtz, under Minn. St. 1941, § 261.08 (Mason St. 1940 Supp. § 3161-1). On April 20, 1944, the district court of Hennepin county made findings determining that respondent, St. Louis county, constituted her place of settlement, and directed her removal from Minneapolis to that county as provided by law. On May 22, 1944, judgment was entered to that effect, and this appeal is taken therefrom.
Maggie Peniondtz resided in Hennepin county, Minnesota, prior to June 21, 1932. On that date she was committed as feeble-minded and placed under the guardianship of the state board of control,[2] which caused her to be entered in a state institution at Cambridge on August 7, 1932. It is not disputed that prior to June 21, 1932, her legal settlement was in Minneapolis, which operates under the town system of caring for its indigent. She remained at the institution until June 14, 1933, at which time she was taken therefrom by her sister under authority of the state board of control and removed to St. Louis county to reside with said sister. St. Louis county follows the county system of caring for its poor. While residing in St. Louis county, at the request of the state *Page 527 
board of control, said poor person was under the supervision of the child welfare board of St. Louis county. In August 1934, that board requested permission from the state board of control to return her to Minneapolis but was denied authority to do so.
On October 28, 1936, public relief was granted Maggie Peniondtz by the county welfare board of St. Louis county, and she thereafter received such relief therefrom until January 1939. On January 27, 1939, she was returned to the county welfare board of Hennepin county pursuant to arrangements made with that board and the state board of control, and thereafter she resided in and received public relief from Minneapolis. Appellant admits that it would be the proper place of settlement for said Maggie Peniondtz except for the fact that she was feeble-minded and under guardianship of the state board of control during all the time she resided in St. Louis county, contending further that, by virtue of her mental condition and her lack of legal capacity, she was disqualified from gaining a poor relief settlement therein because of such guardianship and her incapacity to express any intention as to her place of residence.
1. At the time said poor person was taken to St. Louis county, L. 1933, c. 385, then in effect, provided as follows:
"Every person, except those hereinafter mentioned, who has resided one year continuously in any county, shall be deemed to have a settlement therein, * * *. The time during which a person has been an inmate of a hospital, poorhouse, jail, prison, or other public institution, and each month during which he has received relief from the poor fund of any county or municipality, shall be excluded in determining the time of residence hereunder."
In 1936, this statute was amended by adding a provision relating to the time to be excluded in determining residence for settlement purposes. This additional exception, which we have italicized, is expressed as follows:
"* * * The time during which a person has been * * *under commitment to the guardianship of the state board ofcontrol or *Page 528 one of its state institutions as a feebleminded, * * * person * * * shall be excluded in determining the time of residence hereunder, * * *." Ex. Sess. L. 1935-1936, c. 68, Minn. St. 1941, § 261.07 (Mason St. 1940 Supp. § 3161).
Appellant does not urge that the amendment is retroactive so as to cover the situation here prior to its passage, but asserts that it merely clarified the law in effect prior thereto, and that accordingly, both prior and subsequent to its passage, a person non compos mentis or under guardianship could not acquire a legal settlement. The general rule covering a situation of this kind is expressed in 48 C. J., Paupers, § 50f, as follows:
"An insane person or idiot cannot acquire a settlement in any place by virtue of acts requiring his own volition. Such a person is, however, capable of gaining a settlement by any mode not requiring any act of volition of his own. Accordingly, it has been held in some jurisdictions, under statutes providing for the acquisition of a settlement by continuous residence in a particular place for a designated time, that a person noncompos mentis may acquire a settlement by such residence, unless excluded by the terms of the statute. In such case it has been held that the act of fixing the residence of one who is non compos mentis may be done by the individual having the care of his person."
Examination of L. 1933, c. 385, above referred to, indicates that the facts here involved come within the principles expressed in the general rule we have quoted. No exception is set forth in the statute preventing persons non compos mentis
from acquiring a legal settlement, and, by its express provisions, the law is made applicable to all persons not specifically excluded by its terms. Therein the only requirement necessary for gaining legal settlement is residence
in the place involved for a designated period of time, and the only persons excepted from its provisions are minors, inmates of public institutions, and recipients of public relief. Thereunder it is clear that the indigent person here involved had the right and capacity to acquire a legal settlement in St. Louis *Page 529 
county even though under guardianship at the time. This doctrine finds support in the case of Town of Smiley v. Village of St. Hilaire, 183 Minn. 533, 539, 237 N.W. 416, 419, wherein this court, in referring to said statute, stated:
"It seems to us that the statute would be more workable if the word 'reside' is construed to relate to a temporary living. Perhaps we could say the statute has reference to where the person existed. We construe the statute as meaning that the pauper's settlement is where he has lived longest within such year regardless of his intention."
Under the doctrines thus clearly expressed in our prior decision, as well as under the general rule above referred to, we cannot escape the conclusion that the trial court was correct in its determination that Maggie Peniondtz acquired a residence in the county of St. Louis, even though at the time she was removed thereto she was incapable of expressing any choice or intention with respect to such removal and even though she was under guardianship throughout that period. To hold otherwise would be to extend, by judicial construction, the exceptions to the statutory rule clearly and specifically expressed therein. Street v. C. M. St. P. Ry. Co. 124 Minn. 517,145 N.W. 746.
The case of Brule County v. Pennington County, 68 S.D. 341,2 N.W.2d 679, relied upon by appellant, states the South Dakota rule, which appears somewhat in conflict with the general rule above referred to, and in particular with the Minnesota doctrine as covered by Town of Smiley v. Village of St. Hilaire, 183 Minn. 533, 237 N.W. 416, supra.
2. Appellant asserts that the amendment to L. 1933, c. 385, above referred to, enacted in Ex. Sess. L. 1935-1936, c. 68, Minn. St. 1941, § 261.07 (Mason St. 1940 Supp. § 3161), merely clarifies the prior law and thereby lends support to its contention that the indigent person here involved could not have acquired a legal settlement in St. Louis county, for the reason that she lacked mental capacity during the time she resided therein. In support of this *Page 530 
contention, appellant cites the cases of Township of Equality v. Township of Star, 200 Minn. 316, 274 N.W. 219, and In re Settlement of Venteicher, 202 Minn. 331, 278 N.W. 581, which in substance appear to hold that the amendment was not intended to change the existing law, but rather to remove therefrom any doubt and uncertainty with respect to its provisions. While there is some merit to appellant's contention in this respect and while the language therein lends support to this theory, the later case of In re Settlement of Wrobleski, 204 Minn. 264,268, 283 N.W. 399, 401, 120 A.L.R. 618, indicates that the amendment has been construed as enlarging the exclusions set forth in the prior law and hence constituting a change or alteration therein. In the latter case this court stated:
"The period here involved was before Ex. Sess. L. 1935-1936, c. 68 (3 Mason Minn. St. 1938 Supp. § 3161) became effective, which was on January 24, 1936. It amends § 3161, supra, and enlarges the exclusion by providing that the period during which relief is received from funds supplied by the state of Minnesota or the United States, or any department or departments thereof, supplied as direct relief or in providing work on relief basis and in lieu of direct relief, shall also be excluded. In the absence of the amendment such periods would not be excluded under § 3161, and the statute is to be deemed a recognition of that fact. It is apparent that one of the purposes of the statute was to cover such situations. The statute is not retroactive. In re Settlement of Venteicher,202 Minn. 331, 278 N.W. 581."
A careful consideration of the original statute, the amendment, and our decisions relative thereto leads us to the conclusion that the amendment did not constitute a clarification of the prior law, that it is not retroactive, and hence that the new exception therein provided for can have no application to the facts here involved.
3. Appellant contends the judgment appealed from is inequitable and unjust to appellant since under the law as amended Maggie Peniondtz will not again be able to change her place of *Page 531 
settlement as long as she remains under guardianship, and hence that appellant will continue to be liable for her care throughout her lifetime. In answer to this, it should be noted that at the time she was first committed to guardianship she had not made application for relief. It was not until she had resided in St. Louis county for several years that such application was made. Likewise, it is not disputed that, if she were not mentally deficient or under guardianship, St. Louis county would have been responsible for her care after she had resided therein for one year. Under such circumstances, we do not feel that an injustice has been done. As stated in In re Settlement of Baalson, 211 Minn. 96, 98, 300 N.W. 204, 205:
"* * * This is a controversy between two political subdivisions of the state as to which one must furnish poor relief to Mrs. Baalson and her minor child. As betweenrespondent and appellant, there are no equities. Neither thecity nor the village is to be blamed for the condition in whichthese applicants for poor relief now are." (Italics supplied.)
Under the above circumstances, we conclude that the judgment of the trial court must be affirmed.
Affirmed.
[2] Now known as the Division of Public Institutions, Department of Social Security. L. 1939, c. 431, art. VII, § 1, Minn. St. 1941, § 245.01 (Mason St. 1940 Supp. § 3199-101). *Page 532