231 Minn. 144 (1950)
IN RE SETTLEMENT OF OLIVE UNDERWOOD.
VILLAGE OF LESTER PRAIRIE
v.
CITY OF MINNEAPOLIS AND CITY OF WATERVILLE.
COUNTY OF FREEBORN, APPELLANT.[1]
No. 35,118.
Supreme Court of Minnesota.
May 5, 1950.
Rudolph Hanson, County Attorney, for appellant.
Elmer C. Jensen, for respondent Village of Lester Prairie.
Gallagher, Madden & Sheran, for respondent City of Waterville.
MAGNEY, JUSTICE.
In an action to determine the legal settlement for purposes of poor relief of one Olive Underwood, the court determined that the county of Freeborn was the place of such settlement. The county appeals from an order denying its motion for a new trial.
Olive Underwood is 36 years old. On August 1, 1923, the Underwood family moved to the city of Waterville. They remained there until about June 1, 1942, when they moved to Wabasha. While *145 in Wabasha, Mrs. Underwood, the mother, died. On or about November 1, 1942, the family moved back to Waterville. It then consisted of Joseph Underwood, the father, Olive, the oldest of the children, another daughter, and three sons. One of the sons was away at school. Joseph owned his own home in Waterville. On March 15, 1943, he went to work at a creamery in London, a small community in Freeborn county. As a part of his employment agreement, he rented a house from the creamery. This he sublet to his helper. He himself occupied a room in the creamery, and took his meals with the helper's family. He maintained the home at Waterville and went back there "most week ends, at least probably every other week end." After the death of the mother, Olive requested that she be put in a rest home. She gave as a reason that she "didn't want to be a burden to my sister or to my brothers either." On June 18, 1944, she was placed in the Aberdeen Rest Home in Minneapolis by her father. In the latter part of June 1944 the father sold his home in Waterville. He auctioned off his household belongings, with the exception of some articles which were divided amongst the members of the family. He continued to work at the London creamery until April 1, 1947, when, because of a heart ailment, he was forced to quit work and went to live with a son in Minneapolis. Olive remained in the Aberdeen Rest Home until November 15, 1946, at which time she was placed in the Alice Hanney Rest Home in Lester Prairie, where she was living at the time of the commencement of these proceedings. Both rest homes were private ones for the care of invalids and the aged. Her father paid for her care at the rest homes until January 1, 1948, when, because of his ill health, with resulting loss of income, he could no longer continue to do so. He first requested poor relief for Olive from the city of Waterville in the fall of 1946, but no relief was ever granted.
The question for determination by the trial court under the above facts was whether the legal settlement of Olive for poor relief purposes was in the city of Waterville in Le Sueur county, in the city of Minneapolis in Hennepin county, or in the village *146 of Lester Prairie in McLeod county, all of which operate under the town system of poor relief, or in the county of Freeborn, which operates under the county system. As stated, the court found that the county of Freeborn was the legal settlement of Olive for poor relief purposes.
Olive is incapacitated from making a living by reason of a physical condition known as spastic paralysis.
The court made 11 separate findings of fact. The county of Freeborn made a motion for amended findings in certain particulars. It also made a motion for a new trial on the following grounds in the event the motion for amended findings should be denied:
(a) That the findings are not justified by the evidence.
(b) That the findings are contrary to law.
(c) That the conclusions of law are not sustained by the findings of fact.
(d) That the decision is not justified by the evidence and is contrary to law.
As recently as Kiebach v. Kiebach, 227 Minn. 328, 332, 35 N.W. (2d) 530, 533, we have held that an assignment that "the findings of fact are not sustained by the evidence and contrary to law" is wholly insufficient to challenge any specific finding of fact. If no other grounds were stated in the motion for new trial, no question would be presented by this appeal, and an affirmance would follow.
However, the county of Freeborn made a motion for a new trial on the further ground that the conclusions of law are not sustained by the findings of fact, and assigns as error the conclusions of law which were based on the court's findings of fact.
The following facts are undisputed: Olive is unable to walk, but crawls or rolls when she wishes to go from one place to another. She is able to get out of bed and make her own bed. She is able to feed herself, but is shaky in doing so. There is a slight impairment in her hearing, and her speech is rather indistinct. She *147 writes on the typewriter. In her own words, "I punch with one finger." She has never attended school. Her mother and other members of the family taught her to read. She picked up writing on the typewriter, and writes letters to relatives and members of invalid clubs with whom she gets in touch via the radio. Her I.Q. is 84. At the time of this mental test she was very nervous and upset. One time at Waterville, she voted in a national election for local and national candidates of her own choice from information she had received over the radio. She said that she has had no chance to vote since. She has attended a camp for crippled children. It was her own idea to go to a rest home, and it was also her idea to change from one to the other. Her father testified that mentally she is all right and that her trouble is physical. She was called as a witness in these proceedings and demonstrated by her answers that her father's observation as to her mental condition was correct.
The court's finding of fact No. 8 is as follows:
"That because of her physical and mental condition the said Olive Underwood is and ever since her birth has been wholly dependent upon her father, Joseph Underwood, for financial care and support, and up to the time that she left Waterville, Minnesota, about the 1st day of June, 1944, was wholly dependent upon her father and the other members of her immediate family for care and attention, and that such condition has existed since her departure from Waterville, Minnesota, about June 1, 1944, and still exists; that the status of the said Olive Underwood is and always has been the status of an infant; that she does not possess the intelligence of an infant seven years of age, nor does she possess the physical propensities of an infant two years of age; and that ever since birth she has been and still is wholly dependent upon her father, Joseph Underwood, and the other members of her family."
The court concluded as a matter of law that the legal settlement of Olive was in Freeborn county, where, it states, the father *148 resided for a period of approximately four years prior to April 1947, when he moved to Minneapolis. It further concluded "that the legal settlement * * * followed that of her father, Joseph Underwood, and was the same as that of her father, * * *."
The applicable statute is M.S.A. 261.07, which reads in part as follows:
"Every person except those hereinafter mentioned, who has resided two years continuously in any county, shall be deemed to have a settlement therein, if it has the county system; if it has the town system, he shall have a settlement in the town, city, or village therein in which he has longest resided within two years. * * * The time during which a person * * * has been the inmate of a * * * nursing home for the care of the invalid or aged, whether public or private, * * * shall be excluded in determining the time of residence hereunder, * * *. Every minor not emancipated and settled in his own right and not under guardianship of the director of social welfare or the director of public institutions, or one of the state institutions as a feeble-minded, delinquent, or dependent person shall have the same settlement as the parent with whom he has resided."
The court found that during the time the father was employed at London, that is, from March 15, 1943, until April 1, 1947, he lived in London in Freeborn county "with the full intent, decision, and selection to make said place his home and residence for all purposes," and as a conclusion of law that the legal settlement of Olive followed that of her father.
If Olive were a minor, under the statute quoted, she would have the same settlement as her parent. However, Olive is an adult. She is not under guardianship. Because of her mental and physical infirmities, the court found that "the status of the said Olive Underwood is and always has been the status of an infant." In other words, that, because of her mental and physical infirmities, she takes the same settlement as her father. Although the statute above quoted refers to minors, that is, persons under age, the *149 court found that Olive, because of her infirmities, came within the classification of a minor for purposes of legal settlement, in effect, saying that minority may mean lack of mental capacity as well as lack of age.
In In re Settlement of Peniondtz, 218 Minn. 525, 16 N.W. (2d) 902, the legal settlement for purposes of poor relief of a poor person, an adult who was feeble-minded, was involved. She had been placed under the guardianship of the state board of control. It was contended that, by virtue of her mental condition and resulting incapacity to express any intention as to her place of residence and her lack of legal capacity, she was disqualified from gaining a poor relief settlement in St. Louis county. St. Louis county admitted that it would be the proper place for settlement, except for the fact that the poor person was feebleminded and under guardianship during the time she lived in that county. In holding that the place of legal settlement was St. Louis county, we said (218 Minn. 528, 16 N.W. [2d] 904):
"* * * No exception is set forth in the statute preventing persons non compos mentis from acquiring a legal settlement, and, by its express provisions, the law is made applicable to all persons not specifically excluded by its terms. Therein the only requirement necessary for gaining legal settlement is residence in the place involved for a designated period of time, and the only persons excepted from its provisions are minors, inmates of public institutions, and recipients of public relief. Thereunder it is clear that the indigent person here involved had the right and capacity to acquire a legal settlement in St. Louis county even though under guardianship at the time. * * *

* * * * *
"* * * we cannot escape the conclusion that the trial court was correct in its determination that Maggie Peniondtz acquired a residence in the county of St. Louis, even though at the time she was removed thereto she was incapable of expressing any choice or intention with respect to such removal and even though she *150 was under guardianship throughout that period. To hold otherwise would be to extend, by judicial construction, the exceptions to the statutory rule clearly and specifically expressed therein."
That case seems to us to be controlling here. In our opinion, Olive did not take the legal settlement of her father. She is an adult 36 years of age. She does not come within the exceptions set out in the statute. The law is made applicable to all persons not specifically excluded by its terms, as we said in the Peniondtz case. There is nothing in the statute preventing Olive from having a legal settlement of her own for poor relief purposes. She never lived in Freeborn county. From the time she left Waterville on June 18, 1944, until the time of the hearing, she had lived at private rest homes, which seem to qualify as nursing homes for the care of invalids and the aged. That period of time is to be excluded in determining the time of residence. Under the statute, therefore, her legal settlement for poor relief purposes could not be either Minneapolis or Lester Prairie. That leaves Waterville as the place of legal settlement of Olive for purposes of poor relief. Except for a period of a few months, she resided in Waterville for over 20 years until June 18, 1944, and Waterville is the last place she had acquired legal settlement for poor relief purposes.
In our opinion, the court erred in its conclusions of law based on its findings of fact. A new trial would not change the fact situation, as all matters were fully gone into. It is therefore ordered that the court substitute new conclusions of law in conformity with this opinion.
Order reversed with directions.
MR. JUSTICE FRANK T. GALLAGHER took no part in the consideration or decision of this case.
NOTES
[1] Reported in 42 N.W. (2d) 416.