[File No. 7365]

TOWNER COUNTY, A POLITICAL SUBDIVISION OF THE
STATE OF NORTH DAKOTA, Plaintiff and Respondent,
v. STUTSMAN COUNTY, ET AL, Defendant; RAMSEY
COUNTY, Defendant; PIERCE COUNTY, A POLITICAL
SUBDIVISION OF THE STATE OF NORTH DAKOTA,
Defendant and Respondent; ELIZABETH WILSON, De-
fendant and Appellant; ROLETTE COUNTY, Defendant;
THE PUBLIC WELFARE BOARD OF NORTH DA-
KOTA, Defendant.

(58 NW2d 470)

Opinion filed May 5, 1953

*C. E. Joseph,* for appellant.
*Paul Agneberg,* respondent, Towner County.
*Ray R. Friederich,* for Pierce County.
*Douglas B. Heen,* for Ramsey County.
*C. E. Joseph,* for appellant.
*Paul L. Agneberg,* for respondent.

GRIMSON, J. This is an action brought by Towner County, a political subdivision of the State of North Dakota to determine the place of residence of one Elizabeth Wilson for poor relief purposes. Elizabeth Wilson is made defendant. The counties of Stutsman, Ramsey and Pierce were also made defendants. Rolette County and the Public Welfare Board of North Dakota were interpleaded. The district court, after several hearings in the matter, found that said Elizabeth Wilson

was not a resident of the State of North Dakota for poor relief purposes. The trial court also held that her residence for such purposes still remained in Minnesota. The defendant, Elizabeth Wilson appeals.

The evidence shows that Elizabeth Wilson is a single woman, 40 years of age. She came from Cleveland, Ohio, in 1941, to Minneapolis, Minn. to attend the North Central Bible Institute. She completed her course there in three years. After that she went out as an evangelist and children's worker. She carried on that work in various places in Minnesota until Oct. 21, 1946. Then she came into North Dakota and carried on the same kind of work for the Central District Council of the Assemblies of God, conducting or participating in church services and Daily Vacation Bible Schools and as supply pastor.

Sec 50–0204 NDRC 1943, provides:

"If no type of public assistance or poor relief, whether county, state, or federal has been received, residence in a county, for poor relief purposes, shall be gained as follows:

1. Each male person, and each unmarried female, over the age of twenty-one years, who has resided one year continuously in any county in this state, shall be deemed to have residence in such county;

2. Each person who has resided one year continuously in the state, but not in any one county, shall have a residence in the county in which he or she has longest resided within such year;

3. Every minor . . ."

A fourth subsection not material in this case, was added to the section by Chapter 284 SL 1951.

Under this section this court has repeatedly held that before a male or an unmarried female over the age of 21 years can acquire a residence in the state for poor relief purposes he or she must have a continuous, actual residence in the state for one year. Nelson County v. Williams County, 68 ND 56, 276 NW 265; Griggs County v. Cass County, 65 ND 608, 260 NW 417; County of Grand Forks v. Du Fault, 66 ND 518, 267 NW 136; In re Boise, 73 ND 16, 11 NW2d 80.

"Logically, the first inquiry is whether an applicant for poor relief is a resident of the state and has resided therein continu-

ously for at least a year. A person who is not such resident, or a person who has ceased to be a resident of the state at all, is not a resident for poor relief purposes. Under Sec 501, Comp Laws 1913 (Sec 50–0204 NDRC 1943) a person, in order to have a 'legal residence' in the state for poor relief purposes must have resided therein continuously for at least one year." Enderlin v. Pontiac Twp. 62 ND 105, 118 and 119, 242 NW 117.

The term residence is used in our law in two quite different meanings. In Sec 54–0216 NDRC 1943, pertaining to residence generally, it is defined as: ". . . a place where one remains when not called elsewhere for labor or other special or temporary purposes, and to which he returns in seasons of repose." This definition has been held as synonymous with domicile and means living in a place with the intent of making it a fixed and permanent home. Concurrence of actual residence and intent to remain there are necessary for the acquisition of a domicile. Residence as used in the poor relief statutes means dwelling in a particular place irrespective of any intent of making it a home. A domicile is attained as soon as a home is established without any certain length of time passing. A residence for poor relief purposes is attained only on actual living in a place the length of time required by the statute.

"While domicile and residence are frequently used synonymously, (See 9 RCL p 540, 19 CJ 3951,) yet there is clear distinction in law between them and they are not, when used accurately, convertible terms." McEwen v. McEwen, 50 ND 662, 197 NW 862.

See also Anderson v. Breithbarth, 62 ND 709, 715, 245 NW 483.

"The term 'legal residence' employed by the legislature in the poor relief laws has a meaning quite different from that which the same term has in other laws of the state. Thus, a person is not required to reside for any specified length of time in order to acquire a residence in the state within the purview of the general laws." Burke County v. Brusven, 62 ND 1, 241 NW 82.

"The term 'residence' and 'legal residence' employed by the legislature in laws relating to poor relief have reference to the status acquired by a person within a certain county or political subdivision so as to entitle such person to poor relief within such

county or political subdivision. . . . In our opinion the word 'resided' in Subd 4 of Sec 2501, Comp Laws, 1913, (Subdivisions 1 and 2, Sec. 50–0204 NDRC 1943) has reference to the actual residence as distinguished from the legal or technical residence of an individual, that is, it means the place where a person actually lives and stays." Enderlin v. Pontiac Twp. 62 ND 105, 115, 117, 242 NW 117.

"The word 'reside' has two quite distinct meanings. The one legal and technical; the other personal, actual or physical habitation of a person. Where a person lives with his family at an established home, the place where he 'resides' is clear. That is his technical legal residence. Such residence embraces two elements: First, residence; second, the intention to remain there permanently for an unlimited time. To 'reside' in such manner gives a domicile, . . . That is also the place of his actual or physical habitation. A person who has no such fixed place or domicile wherein he 'resides,' but dwells in hotels, boarding houses, or the homes of others as suitable to his employment of convenience also 'resides' where he actually or personally lives. Indeed, he may with his family occupy a rented house and be within such meaning of the word. He simply lives at the particular place. He has not established a domicile. Such residence under our poor laws is temporary, and continues so, regardless of intention until it has ripened into such domicile. One may have a residence before he acquires a domicile." Town of Smiley v. Village of St. Hilaire et al, 183 Minn 533, 237 NW 416, 417.

The evidence in the instant case shows that Miss Wilson lived and worked in North Dakota at the following places during the time here specified:

| Place | Date Arrived | Date Left | No. of Days | |
|---|---|---|---|---|
| Minneapolis, Minn. ... | Nov. 17, 1941, | Oct. 21, 1946, | 4 yrs. 11 mo. 4 days | |
| Williston & Crosby, N.D. ... | Oct. 21, 1946, | Nov. 3, 1946, | 12 days | |
| Columbus, N.D. ... | Nov. 4, 1946, | Nov. 24, 1946, | 20 days | |
| Jamestown, N.D. ... | Nov. 28, 1946, | Dec. 31, 1946, | 33 " | |
| Egeland, N.D. ... | Dec. 31, 1946, | May 19, 1947, | 139 " | |
| Devils Lake, N.D. ... | May 19, 1947, | July 12, 1947, | 24 days | 228 da. |
| St. Paul, Minn. ... | July 12, 1947, | July 26, 1947, | 14 days | 14 " |
| Rolette, N.D. ... | July 26, 1947, | Oct. 26, 1947, | 92 days | |
| Cando, N.D. ... | Oct. 26, 1947, | Nov. 3, 1947, | 8 " | |
| Barton, N.D. ... | Nov. 4, 1947, | Nov. 25, 1947, | 21 " | |
| Egeland, N.D. ... | Nov. 25, 1947, | May 19, 1948, | 175 " | |
| Devils Lake, N.D. ... | May 19, 1948, | July 5, 1948, | 47 " | |
| Egeland, N.D. ... | July 5, 1948, | July 12, 1948, | 7 " | |
| Devils Lake, N.D. ... | July 12, 1948, | July 16, 1948, | 4 " | 354 " |
| St. Paul, Minn. ... | July 17, 1948, | July 31, 1948, | 14 " | 14 " |
| Williston, N.D. ... | Aug. 1, 1948, | Aug. 6, 1948, | 5 " | 5 " |
| St. Paul, Minn. ... | Aug. 7, 1948, | Aug. 24, 1948, | 17 " | 17 " |
| Cleveland, Ohio ... | Aug. 25, 1948, | Oct. 3, 1948, | 39 " | |
| Winnipeg, Canada, ... | Oct. 5, 1948, | Jan. 6, 1949, | 95 " | |
| Rugby, N.D. ... | Jan. 7, 1949, | Mar. 18, 1949, | 70 " | |
| Minot, N.D. ... | Mar. 18, 1949, | Apr. 30, 1949, | 43 " | |
| Rugby, N.D. ... | Apr. 30, 1949, | May 8, 1949, | 8 " | |
| Cando, N.D. ... | May 8, 1949, | May 24, 1949, | 16 " | |
| Devils Lake, N.D. ... | May 24, 1949, | May 27, 1949, | 3 " | |
| Minot, N.D. ... | May 27, 1949, | June 6, 1949, | 10 " | |
| Devils Lake, N.D. ... | June 6, 1949, | June 23, 1949, | 17 " | |
| Rolette, N.D. ... | June 23, 1949, | Nov. 5, 1949, | 135 " | 302 " |
| St. Paul, Minn. ... | Nov. 6, 1949, | Jan. 9, 1950, | 4 " | 64 " |
| Minneapolis, Minn. ... | Jan. 10, 1950, | Apr. 6, 1950, | 86 " | 86 " |
| Cando, N.D. ... | Apr. 7, 1950, | To date. | | |

The evidence shows clearly that Miss Wilson had no intention of returning to any of these places for the establishment of a home or domicile. She dwelt as a guest in the parsonages or in the homes of her church people. Her sojourn in each place ceased when she packed her grip and went to the next place. Her only intent was to follow her itinerary to carry out her work. She did not obtain a residence for poor relief purposes by her stay in any of these places.

Miss Wilson's first sojourn in North Dakota ceased on July 12, 1947 when she left Devils Lake to conduct a bible school in St. Paul. That was a part of her work and absolutely broke her sojourn in North Dakota. She had then been in this state

for 228 days which was 137 days short of a year necessary to gain poor relief residence in North Dakota. She testified:

"Q.—In July of 1947 you left North Dakota for a period of approximately two weeks for St. Paul, Minn. Ans. Because I had been holding daily vacation bible school for Rev. Gustafson and that date I always kept open to go back and hold daily vacation bible school.

Q.—During your two weeks absence from North Dakota in 1947 you taught bible school in St. Paul?

A.—Yes.

Q.—Did you get paid for teaching Bible School?

A.—Yes, but reimbursement is—well, collection—the free will offering and the collection is taken up the night of the program and is divided. Their supplies are taken out and is divided up with the workers. I usually have just about enough to get to my next place.

Q.—That was your pay or remuneration in St. Paul for teaching bible school?

A.—Yes.

Q.—In other words, the two weeks that you left North Dakota in 1947 for St. Paul wasn't for a vacation on your part or for going down there to visit. It was for going down there for the specific purpose of teaching Bible School?

A.—Yes, because as I said, that was the reason I held that date open."

Miss Wilson came back to North Dakota on July 26, 1947, when she renewed her evangelistic work from place to place in this state according to an itinerary laid out. On July 16, 1948, she again went to St. Paul to conduct vacation bible school she testified:

"Q.—In July of 1948 you were in Minnesota teaching bible school for a period of two weeks? A. Yes, sir. That is why they had daily vacation bible school at that late date because of my schedule as an evangelist. You know an itinerary is made out."

Prior to going to St. Paul that time she had been working at a

youth camp at Devils Lake. On July 16th. her entry in her diary is: "Last day of Youth Camp. All packed ready to leave" and her entry on July 17, 1948 is: "Left on 6:30 bus for St. Paul." She had then been in North Dakota 354 days or 9 days short of the year necessary to obtain poor relief residence in North Dakota.

Then her diary proceeds to record the work she did in St. Paul. On July 30, 1948, she records: "Last day of DVBS. Program this evening . . . All packed & ready to go." Her entry on Saturday, July 31st. is: "Left Minneapolis at 8 A.M. for Williston and Springbrook Dam Youth Camp."

Miss Wilson then stayed in North Dakota only six days from July 31st. 1948 to Aug. 6, 1948 when she again left for St. Paul. From there she took a vacation to her home in Cleveland, Ohio, and later went to Winnipeg, Canada, to attend bible school.

Miss Wilson's last sojourn in North Dakota began when she came to Rugby from Winnipeg Jan 7, 1949, and ended Nov. 5, 1949. During much of that period she was confined to hospitals because of illness. Such periods do not count on the time of residence required for poor relief purposes. Sec 50–0205 NDRC 1943. That period, anyhow, lasted only 302 days even including said hospital periods.

When Miss Wilson was released from the Rolette Community Hospital at the end of that period on Nov. 5, 1949, she went to St. Paul. Then on Jan. 10, 1950, she got a room in Minneapolis and tried out a light job. She testified: "My health just wouldn't take it then . . . the people who promised me a home they failed me because I took sick again." After that a fellow church worker took care of her in her room and the Minneapolis Welfare Board furnished the food until April 1950. Then she was taken to the train, the last part of the way in a wheel chair, placed in a lower berth and given a ticket to Cando, North Dakota. This was done by direction of The Minneapolis Welfare Board.

The evidence shows that Miss Wilson lived in Towner County upon three different occasions. The aggregate time she spent in Towner County exceeded the periods she spent in any other county. Such periods, however, were interrupted so that she

obtained no residence for poor relief purposes either in the county or state. The Minneapolis Welfare Board was informed that Towner County did not acknowledge Miss Wilson as a resident for relief purposes. Without seeking an agreement thereon the Minneapolis Welfare Board directed her transfer to Cando. A young girl was sent along to take care of Miss Wilson on the trip. When she arrived in Cando no arrangements had been made for her but she was taken by kind Samaritans to the hospital where she has since remained. On her condition Dr. J. A. McDonald of Cando testified: "The history of her case shows that she had a number of operations. Her troubles are multiple. She is a neurotic and crippled person. Since she entered Cando Hospital she has been unable to get around on her feet alone without the aid of somebody to help her. Her physical condition is such that she has been, since entering the hospital at Cando, confined to her bed virtually all of the time." On May 3, 1950 she made application to Towner County for relief which she has been receiving since. That time does not count on her residence for poor relief purposes. Sec 50–0204 NDRC 1943. The only property Miss Wilson has is a $1300.00 Ministerial insurance provided by her church for its ministers.

These different periods of temporary sojourns in North Dakota cannot be added together to give her the year's residence necessary for poor relief purposes. There was a complete break between each period during which she worked at her regular vocation in St. Paul, Minn. Each break was an interruption which prevented the necessary year for poor relief purposes to run.

Sec 50–0204, supra, provides that to obtain a residence for poor relief purposes the applicant has to have "resided one year continuously in the state." Webster's New International Dictionary, 2d Ed defines "continuous:" "Having continuity of parts; without break, cessation, or interruption; without intervening space or time; uninterrupted; unbroken; continued; as, a continuous road or murmur."

"The residence for the required length of time must be continuous, and separate periods of residence cannot be added together

to make up the statutory time." 70 CJS Paupers, Sec 32 c 2 p 59.

"To render an act continuous, its performance must be carried on without interruption, for, when its performance ceases, the act is complete and distinct, and, if afterwards a similar act is performed, it cannot be regarded as a continuation of the former. To make it continuous it must be the result of a single impulse, and performed or carried on without intermittance." People v. Sullivan, 9 Utah, 195, 33 P 701, 702.

In the case of Wolfe v. State, 127 Tex Cr R 213, 75 SW2d 677, the defendant was convicted of promoting a walkathon, a physical endurance contest, continuously for more than 24 hours in violation of law. The evidence showed that the contestants rested 15 minutes out of every hour. The court held: "Construing the word 'continuous' as understood in common language the opinion is expressed that the proof fails to support the allegation that the contest continued longer than 24 hours in one continuous competitive period of endurance." In other words each 15 minutes break prevented a continuous contest. In U. S. ex rel. Illuzzi v. Curran, 11 F2d 468, the court held: "This appeal is an effort to establish that, when the prerequisite for exemption from exclusion for illiteracy is that the applicant shall 'have resided (in the United States) continuously for five years,' such five years' residence may be made up of two or more periods, however short, provided the aggregate of the visits to this country amount to five years. To this we cannot agree. It is directly opposed to United States ex rel. Amuso v. Curran (DC) 299 F 214, and Ex parte Domenici (DC) 8 F2d 366, and to the assumptions of United States ex rel. Randazzo v. Tod (CCA) 297 F 214" See also 9 Words and Phrases, Continuous, p 185.

This court agrees with the conclusion of the district court that Miss Wilson never became a resident of North Dakota for poor relief purposes.

Since she was a nonresident of this state, Sec 50–0113 NDRC 1943 applies:

"In case of necessity the county welfare board promptly shall provide medical and surgical attention for any poor person in the county who is not provided for in a public institution. In a

county where a county physician has been appointed on an annual salary, such physician shall be called to attend such poor person. The county welfare board shall cause to be furnished to such poor person the medicines prescribed by the physician. In all cases where, in the opinion of the county welfare board, hospitalization is necessary, it shall be furnished by the county upon approval or subsequent ratification by the county physician and the board, or by the board in a county having no county physician. Where such poor person is a nonresident of the state, the county furnishing such medical or surgical attention from and after Jan. 2, 1951, shall be reimbursed from the public welfare fund of the state for 80 per cent of the expenses incurred in carrying out the provisions of this section. Such reimbursement shall be made upon vouchers having the approval of the state public welfare board." The last two sentences contain the new matter added to Sec 50–0113 NDRC 1943, by Chapter 283 SL 1951.

Under that chapter it became the duty of Towner County to take care of Miss Wilson when she was so unceremoniously thrust upon them. Towner County has done that, and is entitled to a refund from the Public Welfare fund of this state of 80 per cent of the amount it has expended since Jan. 2, 1951.

We find it more difficult to follow the district court in finding that Miss Wilson's residence for poor relief purposes still remains in Minnesota and ordering the Public Welfare Board of North Dakota to make arrangements to determine the place of her settlement there and her removal to that place. It is true that Sec 50–0219 NDRC 1943 provides that: "If any poor person who is a legal resident of another state and who is likely to become a public charge, is found in any county in this state, the county in which he is found may procure an order of the court causing his removal to the state of his legal residence." That presupposes, however, an admitted legal residence in another state so that the unfortunate indigent can be returned amicably. That does not seem to be the case here. We cannot pass upon Miss Wilson's residence for poor relief purposes in another state.

The judgment of the District Court is modified so as to pro-

vide only that Miss Wilson has never acquired residence in North Dakota for poor relief purposes, and as so modified such judgment is affirmed.

Morris, C. J. and Christianson, Burke and Sathre, JJ., concur.